**John ROONEY, Plaintiff,**

v.

**TOWN OF GROTON and The Groton Board of Selectmen, Defendants.**

**Civil Action No. 06–11715–MLW.**

United States District Court,
D. Massachusetts.

Sept. 23, 2008.

Paul F. Kelly, Stephanie R. Pratt, Segal Roitman LLP, Boston, MA, for Plaintiff.

Darren R. Klein, Brian M. Maser, Michele E. Randazzo, Kopelman & Paige, PC, Boston, MA, for Defendants.

MARK L. WOLF, Chief Judge.

ORDER ENTERED. Therefore, it is hereby ORDERED that: 1. The Report and Recommendation on the Motion for Summary Judgment (Docket No. 51) is ADOPTED in its entirety. 2. The Motion for Summary Judgment (Docket No. 31) is ALLOWED with respect to counts 1 and II of the complaint. 3. Counts III through IX of the complaint are REMANDED to the Middlesex Superior Court.

*REPORT AND RECOMMENDATION ON DEFENDANTS TOWN OF GROTON AND THE GROTON BOARD OF SELECTMEN'S MOTION FOR SUMMARY JUDGMENT (# 31)*

COLLINGS, United States Magistrate Judge.

### I. Introduction

The issue of federal law which this case presents is whether plaintiff Lieutenant John Rooney ("Rooney" or "the plaintiff"), a police officer with the Town of Groton, Massachusetts ("Groton"), is exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA") because his duties are primarily "executive" or "administrative." Subsumed in that issue is the effect on the analysis of the so-called "first responder" provision which has been added to the regulations. Because the Court finds that on the undisputed material facts the plaintiff is exempt because he works in an "executive" and/or "administrative" position and that he is not a "first responder," he is not entitled to overtime compensation. The Court, therefore, shall recommend that summary judgment be entered against him on the federal claims and that the case be remanded to the Superior Court for adjudication of the claims under state law.

### II. Procedural Background

On August 28, 2006, the plaintiff filed a complaint against defendants Town of Groton and the Groton Board of Selectmen ("the Board of Selectmen") (collectively, "the Town" or "the defendants") in the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts alleging that the Town has failed to pay him overtime compensation, among other allegations. (# 1) The Town subsequently removed this action to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §§ 1441 and 1446.(# 1) This Court has original jurisdiction under 28 U.S.C. § 1331, over claims I and II of the plaintiff's complaint—alleged violations of the FLSA. On October 2, 2006, Groton and the Board of Selectmen filed an answer to the complaint.[1] (# 2)

---

1. On December 17, 2007, this case was referred to the undersigned for report and recommendation on this dispositive motion, pursuant to 28 U.S.C. § 636(b)(1)(B).

On January 29, 2008, after the parties completed discovery, Groton and the Board of Selectmen filed a joint motion for summary judgment (# 31) with an accompanying statement of material facts including twenty-four (24) exhibits (# 37), a memorandum in support (# 38), an affidavit of counsel (# 33) and an affidavit of the former Chief of Police (# 39). Rooney subsequently filed an opposition to the dispositive motion on March 19, 2008 [2] (# 42) together with an accompanying memorandum in support (# 43) and an affidavit including seven (7) exhibits. (# 44) The Town filed a reply to the plaintiff's opposition and a motion to strike certain portions of Rooney's opposition (# 47), together with affidavits (## 48, 49) on April 17, 2008.[3] On April 28, 2008, Rooney filed an opposition to the Town's motion to strike. (# 50) The Town's motion to strike was denied on May 8, 2008.

At this juncture, the record is complete and the motion for summary judgment stands ready to be decided.

### III. General Factual Background

In large measure, the historical facts are uncontested. Rooney disputes only nine (9) of the Town's one hundred thirty-three (133) statements of fact [4], and they shall be duly noted, as relevant, in the following recitation.

Since April 2001, Rooney has been an employee of the Town. (# 1 ¶ 7; # 2 ¶ 7; # 37 ¶ 4) The plaintiff was first a Patrolman in Groton and then in September 2002, he was promoted to the rank of Lieutenant by the Board of Selectmen.[5] (# 1 ¶¶ 7, 10; # 2 ¶¶ 7, 10; # 37 ¶ 5)

The Groton Police Department is organized in a paramilitary structure. (# 37 ¶ 6; # 37, Exh. 4 [6] at 15:4) Robert Mulhern ("Mulhern") served as Groton's Chief of Police ("the Chief") from August 2000 until October 1, 2007, essentially encompassing the time period pertinent to Rooney's allegations. (# 37 ¶ 2) Under the Chief, in order of rank and authority, are the positions of Captain, Lieutenant, Sergeant, full-time Patrolman, and part-time Patrolman. (# 37 ¶ 8)

#### A. Rooney's Promotion

In August of 2000, Mulhern appointed Jack Saball ("Saball") to the position of Captain, a newly created position designed to bolster the administrative staff. (# 37 ¶¶ 9–10) Prior to his appointment to Captain, Saball had served as a Lieutenant since 1990. (# 37 ¶ 11) As a Lieutenant and a Captain, Saball functioned as Second–in–Command with primary responsibility for administrative work such as supervision of subordinate officers, oversight and quality control of the Police Department's comput-

---

**2.** Rooney moved for an extension of time to file his opposition to the motion for summary judgment (# 41) on March 3, 2008 which was granted on March 5, 2008.

**3.** On March 26, 2008, Groton and the Board of Selectmen moved to extend the time to file a reply to Rooney's opposition (# 45) and on March 27, 2008, the motion was granted.

**4.** The disputed facts are: (1) the Town's characterization of his duties as "administrative"; (2) the discussions leading to his promotion; (3) the amount of hours worked; (4) the communication of the differences in salaries surrounding his promotion; (5) his variable pay through overtime payments; (6) his "exclu-

sive authority" to settle cases; (7) his role as Critical Incident Commander; (8) the reasons why he did not receive in-service training; and (9) his role and responsibility for hiring. (# 37; # 42)

**5.** The Board of Selectmen, consisting of five (5) members, serves as Groton's chief policy maker and Chief Executive, and has the responsibility of serving as Groton's appointing authority for police officers. (# 37 ¶ 1)

**6.** The exhibits to Defendants' Statement of Material Facts are referenced by the docket numbers 1–24 rather than the numbers designated by the defendants, 1A–E, 2–15.

er systems, internal investigations, training assignments, and reviewing incident reports and criminal reports. (# 37¶ ¶ 12–14) Subsequent to Saball's appointment, Mulhern promoted Jack Balonis ("Balonis") to Saball's Lieutenant position. (# 37 ¶ 15) As a Lieutenant, Balonis oversaw operational aspects of the Police Department. (# 37 ¶ 16) Both Saball and Balonis retired in August 2002. (# 37 ¶ ¶ 17–18)

In August 2002, Mulhern offered then Patrolman Rooney the open Lieutenant's position, which he eventually accepted. (# 37 ¶ ¶ 19–24 [7]) The Captain's position has been vacant since Saball's retirement. (# 37 ¶ 17) Rooney was the only Lieutenant in the Police Department from the time of his appointment to the position through September 2007. (# 37¶ ¶ 27–28)

### B. Rooney's Salary

At the time the summary judgment papers were filed, Rooney's salary was $69,000 per year. (# 37 ¶ 31) As of July 1, 2007, a top-step Sergeant and Patrolman were paid $61,089.19 and $53,121.03 per year, respectively. (# 37 ¶ 32) The plaintiff receives the same health insurance and sick time benefits as the Patrolmen. (# 1 ¶¶ 39–40; # 2 ¶¶ 39–40) Rooney is eligible to receive the same educational incentive, vacation, longevity, earned leave, and holiday pay as the Patrolmen. (# 1 ¶¶ 42–46; # 2 ¶¶ 42–46)

The plaintiff receives 1/26 of his annual salary on a bi-weekly basis for each pay period. (# 37 ¶ 34) He claims to have been compensated for two instances of overtime on September 16, 2006 (eleven hours of overtime for work at a community celebration) and on September 19, 2006 (six hours of overtime for work at the Groton elections) since he assumed his current position. (# 44 ¶ 24, Exh. 6, Exh. 7) The compensation for the work at the Groton elections is documented on one of the pay stubs to which Rooney refers in his Affidavit, but is not clear from the other pay stub whether the plaintiff was compensated for the former work. (# 44, Exh. 6, Exh. 7)

### C. Rooney's Working Hours

Since November 2002—three months after the time Rooney was promoted to Lieutenant—until the present time, the plaintiff has worked five (5) days per week, Monday through Friday—otherwise known as a "five and two" schedule [8]. (# 1 ¶ 11; # 2 ¶ 11; # 37, Exh. 3 at 122; # 44 ¶ 6) Unlike Rooney, the Patrolmen and Sergeants worked according to a four on, two off schedule. (# 1 ¶ 48; # 2 ¶ 48; # 37 ¶ 126, Exh. 16, Article XV, § 1) If the plaintiff does not arrive at work at the start of his 8:00 a.m. shift, his vacancy is not back-filled by a Patrolman or Sergeant; as Lieutenant, he is generally free from supervision by the Chief. (# 37 ¶¶ 93–94)

Groton is a signatory to a collective bargaining agreement ("agreement") with the Groton Police Patrolmen's Association ("Union"). (# 37 ¶ 121) The Union represents Patrolmen and Sergeants for purposes of collective bargaining. (# 37 ¶ 121) As specified in the agreement, the four on,

---

7. Rooney disputes the content of the discussions he had with Mulhern about the Lieutenant's position prior to his promotion, claiming that contrary to the Chief's statements, "Mulhern did not tell [him] that [he] would be working in an administrative position or that [he] would not be eligible for overtime"... "[n]or did Chief Mulhern tell [him] that [he] would be eligible for compensatory time." (# 44 ¶ 4)

8. There is a dispute about the hours that Rooney worked from September 2002 to November 2002. The plaintiff claims that he worked "during the day" on Mondays and 3:00 p.m. to 11:00 p.m. on Tuesday through Friday, whereas the defendants claim that he worked an 8:00 a.m. to 4:00 p.m. schedule during those months. (# 37 ¶ 26; # 44 ¶ 6)

two off work schedule is organized such that the Patrolmen and Sergeants work four days in a row and then have two days off. (# 1 ¶ 47 [9]; # 37 ¶ 126, Exh. 16, Art. XV, § 5) The agreement sets forth that "[e]mployees in an administrative capacity may be exempted [from a four and two schedule] by the Chief of Police," but those employees are still "entitled to the benefits of the four (4) and two (2) scheduling." (# 37 ¶ 128, Exh. 16, Art. XV, § 15) Thus, "[e]mployees who are assigned to an administrative position five (5) and two (2) schedule shall be granted one additional day off per calendar month to be used within that month and five (5) additional days to be used throughout the year, at the discretion of the Chief of Police." (# 37 ¶ 128, Exh. 16, Art. XV, § 5) Rooney has worked a five (5) and two (2) schedule with weekends off since his promotion. (# 37 ¶ 130) Due to the difference in his schedule as compared to the Patrolmen and Sergeants's schedules, the plaintiff has worked seventeen (17) extra days every year since 2002. (# 1 ¶ 50; # 2 ¶ 50) Rooney alleges that he has not been compensated for the additional seventeen (17) days whereas Groton and the Board of Selectmen "agree that the Plaintiff has worked 17 extra days a year but denies that the Plaintiff has not received additional compensation." (# 1 ¶ 50; # 2 ¶ 50) [10]

### IV.  Summary Judgment Standard of Review

The purpose of summary judgment " 'is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' " *Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1st Cir.2005) (quoting *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)); *see also Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990).  The party moving for summary judgment bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top–Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir.2003) (citations omitted); *see also De La Vega v. San Juan Star, Inc.*, 377 F.3d 111, 115–16 (1st Cir.2004).  " 'Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show, through materials of evidentiary quality, that such a dispute exists.' " *Cordero–Soto v. Island Finance, Inc.*, 418 F.3d 114, 119 (1st Cir.2005) (quoting *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 66 (1st Cir.2004)); *see also Mulvihill*, 335 F.3d at 19 (citing *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000)).

When considering whether to grant summary judgment, the Court must determine whether ". . . the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The Court looks to "the record on summary

---

9.  In their answer, the defendants state that the agreement speaks for itself. (# 2 ¶ 47)

10.  In accepting the Lieutenant position and changing to a five and two schedule, Rooney received an increase in salary. (# 37 ¶¶ 31, 32) The plaintiff gets paid biweekly for eighty (80) hours of work while a bargaining unit member working on an administrative five and two schedule is paid biweekly for seventy-

five (75) hours of work, but also receives an additional day off per month and five additional days per year. (# 37 ¶¶ 128–131) In any event, for purposes of the FLSA claim, this apparent dispute of fact is really an issue of whether the overtime provisions of the FLSA apply to Rooney, or whether he is found to be covered by one of the exemptions.  In other words, are the 17 extra days per year to be considered overtime or not?

judgment in the light most favorable to the nonmovant." *Hoffman v. Applicators Sales and Service, Inc.,* 439 F.3d 9, 11 (1st Cir.2006) (citing *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 50 (1st Cir.2000)). All reasonable inferences will be drawn in the favor of the nonmoving party. *Poulis–Minott v. Smith,* 388 F.3d 354, 361 (1st Cir.2004); *see also Alliance of Auto. Mfrs. v. Gwadosky,* 430 F.3d 30, 34 (1st Cir.2005), *cert. denied,* 547 U.S. 1143, 126 S.Ct. 2034, 164 L.Ed.2d 806 (2006); *Santoni v. Potter,* 369 F.3d 594, 598 (1st Cir.2004); *Mulvihill,* 335 F.3d at 19; *Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, Inc.,* 332 F.3d 6, 13 (1st Cir.2003).

Despite this "notoriously liberal" standard, *Mulvihill,* 335 F.3d at 19, summary judgment cannot be construed as "a hollow threat." *Kearney v. Town of Wareham,* 316 F.3d 18, 22 (1st Cir.2002). A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An issue is 'genuine' for purposes of summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Poulis–Minott,* 388 F.3d at 362–63 (quoting *Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88, 90 (1st Cir. 1993), *cert. denied,* 511 U.S. 1126, 114 S.Ct. 2133, 128 L.Ed.2d 863 (1994)); *Rojas–Ithier,* 394 F.3d at 42; *Calero–Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir. 2004). Mere speculations raised by the nonmoving party that are unsubstantiated will not be sufficient to defeat summary judgment. *Nieves–Luciano v. Hernandez–Torres,* 397 F.3d 1, 5 (1st Cir.2005).

In weighing whether a factual dispute is "material," the Court must examine the substantive law of the case because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *De La Vega,* 377 F.3d at 115; *Rojas–Ithier,* 394 F.3d at 42.

The focus at the summary judgment phase "'should be on the ultimate issue: whether, viewing the aggregate package of proof offered by the plaintiff and taking all inferences in the plaintiff's favor, the plaintiff has raised a genuine issue of fact.'" *Rivas Rosado v. Radio Shack, Inc.,* 312 F.3d 532, 535 (1st Cir.2002) (quoting *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430–31 (1st Cir.2000)); *see also Nieves–Luciano,* 397 F.3d at 4; *Rojas–Ithier,* 394 F.3d at 42. The party objecting to summary judgment must set forth specific facts proving a genuine issue of material fact in order to "'deflect the swing of the summary judgment scythe.'" *Noviello v. City of Boston,* 398 F.3d 76, 84 (1st Cir.2005) (quoting *Mulvihill,* 335 F.3d at 19). Where "the nonmoving party rests 'merely upon conclusory allegations, improbable inferences, and unsupported speculation,'" summary judgment will be appropriate. *Forestier Fradera v. Municipality of Mayaguez,* 440 F.3d 17, 21 (1st Cir.2006) (quoting *Benoit v. Technical Mfg. Corp.,* 331 F.3d 166, 173 (1st Cir. 2003) (further internal citations omitted)). Moreover, the party objecting to summary judgment may not rest "merely on allegations or denials in its own pleading." Fed. R.Civ.P. 56(e); *Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 425 F.3d 67, 83 (1st Cir.2005). Instead, Rule 56(c):

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## V. Specific Facts Material to FLSA Analysis

### A. The Current Dispute

According to the plaintiff,

Prior to 2004 both the Town and Lieutenant Rooney understood that his position was exempt from the overtime provisions of FLSA. In 2004, however, substantial changes took place in FLSA's regulatory framework, including changes that applied to police officers. Specifically, the Department of Labor determined that police officers and firefighters, so-called first responders, were non-exempt employees (i.e., entitled to overtime) regardless of whether they exercised supervisory authority.

Memorandum # 43 at 4.

While the plaintiff appears to concede here that absent the changes to the regulations in 2004, he would still be exempt (as he appears to say he was prior to 2004), his arguments in his brief are much broader. Rather, he seems to argue that he is not now nor has he ever been exempt under the "administrative" and/or "executive" work provisions [11]. Accordingly, the Court shall consider whether, in the light most favorable to him, the Town has met its burden of showing that on the undisputed material facts, Rooney does primarily "administrative" and/or "executive" work and is exempt from the overtime provisions of the FLSA. The Court shall, in addition, consider the effect of the 2004 changes to the regulations on this analysis.

### B. Interactions on the FLSA Issue Between Rooney and the Town

On October 4, 2004, the plaintiff asked Groton's Personnel Board to convert his pay from a "salary" to an "hourly" rate per the August 2004 FLSA amendments. (# 44, Exh.2) Two changes to the FLSA regulations were made that are significant to this case: (1) 29 C.F.R. § 541.100 was amended to include a higher weekly salary requirement and a requirement that to be an exempt executive, the employee must have "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight"; and (2) the "first responder" regulation, 29 C.F.R. § 541.3(b), was added to clarify the § 541 regulations.[12]

The Groton Personnel Board consists of "five members to be appointed by the Selectmen," (# 37, Exh.19, Art. I § 48–1), and has the "power[ ] ... [t]o prepare and administer a wage and salary classification plan." (# 37, Exh.19, Art. I § 48–2(A)) Groton's Personnel Board reviewed the FLSA changes and recommended that Groton adopt the amendments retroactive to September 1, 2004. (# 44, Exh.3, Exh. 4) To make this change effective, the Personnel Board's recommendation had to be approved by the Board of Selectmen. (# 37, Exh.19, Art. II § 48–6(B)) The Groton

---

**11.** In Count I of the complaint Rooney alleges that the Town denied him his daily and/or weekly overtime pay from September 2002 to August 2006 in violation of the FLSA. (# 1 ¶¶ 72–74) In Count II it is alleged that the Town refused to pay Rooney overtime or credit him with time for the seventeen (17) extra days worked per year from September 2002 to August 2006 in violation of the FLSA.

(# 1 ¶¶ 75–77) The remaining seven counts in the complaint set forth state law claims.

**12.** *See Crawford v. Lexington–Fayette Urban County Gov't,* No. 06–299–JBC, 2008 WL 2598345, at *3 (E.D.Ky. June 25, 2008) ("In creating the new regulation [29 C.F.R. § 541.3(b) ], the DOL stated that it had no intention of departing from established law[,]" but rather to "clarify" the regulation.).

Town Code states that "[a]ny increase in wages or salaries under this section shall be effective only if ... approved by the Finance Committee and Board of Selectmen." (# 37, Exh.19, Art. II § 48–6(B))

In a letter to the Board of Selectmen, the plaintiff requested review of his salary status and stated that "a change occurred on or about August 23, 2004 [to the FLSA] .... [and] it appears clear that both the Lieutenant and Captain's positions are now eligible for overtime." (# 44, Exh.4) In a letter from the Board of Selectmen to Rooney, the Board of Selectmen denied adoption of the new FLSA standards for him and said that he was "exempt under the Administrative Exemption of the amended FLSA guidelines." (# 44, Exh. 6) The instant case was filed approximately two years after this exchange and the FLSA amendments. (# 1)

### C. Rooney's Job Functions

In his capacity as a Lieutenant, Rooney executes search warrants, testifies in court, prosecutes criminal offenders, initiates traffic stops [13], and supervises other officers. (# 1 ¶¶ 15–18, 22; # 2 ¶¶ 15–18, 22) The plaintiff oversees and supervises the issuance of search warrants which includes verifying the legality of such warrants as well as determining the safest way to execute the warrants, the necessary manpower to execute the warrant, and directing staff to carry out the warrants. (# 37 ¶ 65)

Since his promotion, Rooney has served as the Police Department's Court Officer. (# 37 ¶ 41; # 44 ¶ 11) The plaintiff spends most of his work week—approximately 75%—in court acting as the prosecutor, presenting testimony and evidence, meeting with defendants, recommending findings and dispositions on civil and criminal matters, cross-examining witnesses and defendants, as well as working with and supervising case files in his office reviewing evidence and elements of crimes in preparation for court. (# 37 ¶¶ 44–53; # 44 ¶ 12) As the Court Officer, Rooney represents police officers who issued citations and the Police Department before the court, prosecuting cases on behalf of the Commonwealth of Massachusetts. (# 37 ¶¶ 42–43) According to the defendants, Rooney has exclusive authority to settle cases in lieu of going through the full proceedings (# 37 ¶ 52); the plaintiff denies this exclusive authority. (# 44 ¶ 15, Exh. 1, § F.32–33 [14]) A Patrolman or Sergeant, on the other hand, did not have the authority to settle cases. (# 37 ¶ 55) In fact, the only time that a Patrolman or Sergeant would appear in court was if the individual to whom the citation was issued appealed the fine through the final stages of a hearing before a judge. (# 37 ¶ 56)

Rooney infrequently responds to "routine police intervention" calls. (# 37 ¶¶ 108–119) The plaintiff exercises discretion regarding calls to which he will respond as he was not required to respond to such calls. (# 37 ¶¶ 87–88) It is not the normal procedure to place the Chief or Rooney on a call. (# 37 ¶ 106) A Patrolman, on the other hand, does not have discretion to choose not to respond to certain calls. (# 37 ¶ 96) As an example for comparative purposes, Rooney's self re-

---

**13.** In further answering, "the Defendants state that the Plaintiff has stopped six (6) vehicles since his promotion to Lieutenant in September 2002." (# 2 ¶ 18)

**14.** Rooney contends that "[t]he Town overstates [his] 'exclusive authority' to settle cases." (# 42 ¶ 6) The evidence upon which he relies, the Rules and Regulations for the Government of the Police Department of the Town of Groton, specifically Rules 32 and 33 to the effect that all officers involved in cases shall participate in judicial proceedings as necessary, cooperate fully and testify truthfully (# 44, Exh. 1), do not refute his authority to settle cases in lieu of going to trial.

ported daily log of calls to which he responded between September 5, 2002 through January 9, 2007 is ten (10) pages in length whereas Patrolman Gigliotti's daily log for the period January 1, 2003 through November 21, 2007 is four hundred and one (401) pages in length. (# 37 ¶¶ 114–115, 119)

Rooney generally does not make arrests—he has made five arrests since being appointed to the position of Lieutenant in September, 2002. (# 37 ¶¶ 90–91)

The plaintiff is responsible for scheduling "in-service training" for all subordinate officers of the Police Department. (# 37 ¶ 72) Rooney is the only uniformed officer in the Police Department who did not attend the in-service training because Mulhern determined not to send him for it. (# 37 ¶ 73; # 44 ¶ 22 [15])

#### D. Rooney's Supervisory Role

Rooney makes judgment calls regarding work that subordinates are to perform, exercises discretion in directing the work of subordinate employees, supervises employees under him, and has the authority to order in additional police personnel to work. (# 37 ¶¶ 57–62, 67, 85, 89) The plaintiff has served as an internal affairs investigator for the Chief and he has served as the Critical Incident Commander ("CIC") [16]. (# 37 ¶¶ 64, 70, Exh. 1 at 72–74) As the CIC, the plaintiff would direct the work of employees when incidents such as civil unrest or natural disasters arose. (# 37 ¶ 64, Exh. 1 at 72–73) Rooney also handles community complaints which require him to investigate civilian complaints against uniformed officers and thereafter submit a report to the Chief regarding his findings. (# 37 ¶ 66)

As a Lieutenant, Rooney oversees the work of approximately fourteen (14) police officers. (# 37 ¶ 29) He reviews subordinate officers' incident reports, counsels subordinate officers when their incident reports are deficient, and makes recommendations to Patrolmen and Sergeants on how to improve their report writing. (# 37 ¶ 67) Sometimes, Rooney would speak with Mulhern about improperly prepared incident reports. (# 37 ¶ 68) The plaintiff supervises the dispatchers to ensure that log entry categories were correct. (# 37 ¶ 85) The Dispatch Supervisor is required to obtain Rooney's approval in order to revise mistakes on incident reports when incident reports have been signed off on by a Sergeant. (# 37 ¶ 86)

Rooney has been involved in the disciplinary process at the Police Department. (# 37 ¶ 84) As a part of this process, the plaintiff has disciplined employees for Rule and Policy violations. (# 37 ¶¶ 71, 84)

#### E. Rooney's Hiring and Promotion Authority

Rooney has participated in the hiring process. (# 37 ¶ 74) He has acted as a member of an interview panel, ranked applicants on account of their suitability for the position, discussed the merits of applicants, made applicant recommendations to the Chief regarding the applicant's suitability, discussed the potential promotion of a Patrolman to the rank of Sergeant, and discussed the assignment of an officer to an administrative position such as Detective and School Resource Officer. (# 37 ¶¶ 75–78, 80–83) Further, the Chief took Rooney's recommendations into consideration when he made the determination of which candidates to appoint or promote. (# 37 ¶¶ 79–83; # 44 ¶ 23) The plaintiff claims that he had no input into some hiring decisions and that "[o]ther person-

15. Rooney notes that since Mulhern's retirement, the new Chief of Police has assigned him to annual training. (# 22 ¶ 22)

16. Rooney notes that he has assumed the role of CIC only once in the time he served as a Lieutenant. (# 44 ¶ 16)

nel decisions made by Chief Mulhern were made without placing weight on [his] comments." (# 44 ¶ 23)

### VI. Discussion

In moving for summary judgment, the Town claims that Rooney is an exempt executive and/or administrative employee under the FLSA, 29 U.S.C. §§ 201 *et seq.* The plaintiff counters that the "first responder" regulation "substantially diminishes the effect of supervisory authority on resolution of the exemption question." (# 43 at 9) The Court considers these argument seriatim.

The purpose of the FLSA is to eliminate labor conditions that are "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." Title 29 U.S.C. § 202(a). In 1974, Congress extended the reach of the FLSA and applied it to the states and local governments. The Supreme Court affirmed this grant of power in *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 555–56, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). *See also O'Brien v. Town of Agawam*, 350 F.3d 279, 281 n. 1 (1st Cir.2003) [hereinafter *O'Brien I* ].

The FLSA provides that employees shall be compensated "for a workweek longer than forty hours ... at a rate not less than one and one-half times the regular rate at which he is employed." Title 29 U.S.C. § 207(a)(1). The "regular rate" is defined as "all remuneration for employment paid to, or on behalf of, the employee," subject to a few exceptions. Title 29 U.S.C. § 207(e).

The FLSA exempts certain employees from the overtime provision if the employee works in an "executive," "administrative," or "professional" capacity. Title 29 U.S.C. § 213(a)(1). The Town has the burden of proving that an exemption applies to Rooney, and the exemptions should be "narrowly construed against the

employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, n. 4, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960) (citing *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 294, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959)); *see also Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1070 (1st Cir.1995).

### A. Executive Exemption

The test to determine whether an employee falls under the executive exemption has four elements. First, the employee must be "[c]ompensated on a salary basis at a rate of not less than $455 per week;" second, the "primary duty" of the employee must be "management of the enterprise in which the employee is employed;" third, the employee must "customarily and regularly direct[ ] the work of two or more other employees;" and the fourth element is that the employee "has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100. Each element shall be discussed in turn.

### 1. Salary Basis

In determining whether Rooney is compensated on a salary basis for FLSA purposes, two prerequisites must be established: 1) that the employee earns more than $455 per week; and 2) that the "employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R.

§§ 541.100(a)(1), 541.602. *See Auer v. Robbins*, 519 U.S. 452, 456, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); *Cash v. Cycle Craft Co., Inc.*, 482 F.Supp.2d 133, 136 (D.Mass. 2007).

First, it is uncontested that the plaintiff earns more than $455 per week. The plaintiff's salary is $69,000 per year. (# 37 ¶ 31, Exh. 7, Rooney's Answer to Interrogatory No. 2) Rooney testified in his deposition that he received 1/26th of his salary each bi-weekly pay period which calculates to be well above $455 per week. (# 37 ¶ 33; # 37, Exh. 1 at 19) A payroll sheet attached to Mulhern's affidavit indicates that Rooney received $2,589.60 for an eighty hour pay period ending on September 16, 2006 [17]. (# 48, Exh.2)

Second, the plaintiff received this compensation on a salary basis. All that matters for the analysis, as interpreted by the Supreme Court in *Auer*, is that the employee's "compensation not be subject to reduction because of variations in the 'quality or quantity of the work performed.' " *Auer*, 519 U.S. at 456, 117 S.Ct. 905 (quoting 29 C.F.R. § 541.118(a) (1996) (current version at 29 C.F.R. § 541.602)). The *Auer* case was factually similar to the one at hand—a group of police sergeants and lieutenants brought FLSA claims against the St. Louis Board of Police Commissioners for overtime pay. *Id.* at 455, 117 S.Ct. 905. The Court affirmed the lower court's holding that the officers were paid on a salary basis. *Id.* at 464, 117 S.Ct. 905.

■ Rooney admitted in his deposition that his "pay does not change from pay period to pay period" and that his "pay has never been reduced because of quality of (sic) quantity of work that [he] perform[s]." (# 37, Exh.1 at 19) That the plaintiff is listed on the September 16, 2006 pay roll sheet as receiving an hourly wage is not dispositive in determining whether he is compensated on a salary basis. *See Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 658 (10th Cir.) ("Since overtime is not inherently inconsistent with one's status as a salaried employee, the fact that the firefighters' paystubs indicated the number of hours covered is also not inconsistent with salaried status."), *cert. denied*, 516 U.S. 965, 116 S.Ct. 419, 133 L.Ed.2d 336 (1995).

*Auer* goes on to state that simply because a pay reduction is theoretically possible, it does not follow that the employee is not paid on a salary basis. *Auer*, 519 U.S. at 458–60, 117 S.Ct. 905. The Supreme Court approved the Secretary of Labor's interpretation of the salary-basis test, holding that the salary basis status will not apply only when "there is either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." *Id.* at 461, 117 S.Ct. 905. In this case, there is no policy akin to the one referenced in *Auer*.

■ The only facts purporting to support the plaintiff's contention that his salary has fluctuated are two instances in which he completed "detail" assignments. (# 44, Exh.7, Exh.8) Although Rooney characterizes these assignments as "overtime" (# 44 ¶ 24), they were actually paid detail assignments as defined in the agreement. (# 48 ¶¶ 2–18) A detail assignment

---

17. Although there is a small discrepancy between the annual salary divided by twenty-six pay periods and the amount listed on the pay roll sheet for two weeks of work, this discrepancy is most likely based on the fact that approximately one year had elapsed from the date of the pay roll sheet to the date that Rooney answered the Town's interrogatories. (# 37, Exh.7, Lieutenant Rooney's Answer to Interrogatory No. 2; # 48, Exh.2) This discrepancy does not change the fact that the plaintiff earned more than $455 under either calculation.

is a paid work assignment outside the scope of the regular job description of a police officer. (# 37, Exh.16, Art. XVIII, § 1) *See also Murphy v. Town of Natick,* 516 F.Supp.2d 153, 157–58 (D.Mass.2007) (explaining that a "Town Detail" is paid work "[i]n addition to [a police officer's] regular police duties ... on behalf of a 'separate and independent' employer") (quoting 29 U.S.C. § 207(p)). The detail assignments are first offered to members of the bargaining unit—Sergeants, full-time Patrolmen, and part-time Patrolmen—and if none of the members accept the assignment, the detail assignments are then offered to the Lieutenant position. (# 48 ¶ 5) Rooney volunteered for the detail assignments on both occasions—after all of the subordinate officers turned it down—and he was compensated for these assignments at the rate of "one and a half times the equivalent of 1/40 of his weekly pay." (# 48 ¶¶ 11–18)

Further, the United States Department of Labor has opined that hours worked outside of the normal schedule do not necessarily take the employee's salary basis designation away—even if the employee is compensated at a rate identified as "overtime" by the employer. *See* U.S. Dep't of Labor, Wage and Hour Div., Opinion Letter (Sept. 22, 1965), *available at* 1965 DOLWH LEXIS 171. The Ninth Circuit held that "[t]he DOL has unequivocally and consistently declared that additional compensation in the form of hourly overtime payment does not defeat exempt status under the salary-basis test .... 'extra compensation may be paid for overtime to an exempt employee on any basis. The overtime payment need not be at time and one-half, but may be at straight time, or at one-half time, or flat sum, or on any other basis.'" *Boykin v. Boeing Co.,* 128 F.3d 1279, 1281 (9th Cir.1997) (quoting D.O.L. Wage & Hour Division Opinion Letter No. 1738 (April 5, 1995)). *See also Aaron,* 54 F.3d at 658 ("Since overtime is not inher-

ently inconsistent with one's status as a salaried employee, the fact that the firefighters' paystubs indicated the number of hours covered is also not inconsistent with salaried status. Such an accounting of hours is necessary to compute overtime compensation."); *Acs v. Detroit Edison Co.,* 444 F.3d 763, 767–68 (6th Cir.2006). The paystubs that Rooney has submitted identifying "overtime" pay—which really consisted of police details—are not inconsistent with the persuasive authority of the Ninth and Tenth Circuits as well as the Department of Labor's opinion letter. Thus, the argument that the plaintiff is paid on an hourly basis because he was paid overtime cannot stand.

Rooney additionally argues that he should be a non-exempt employee because the Town's Personnel Board converted his pay from a "salary" to an "hourly" rate after the August 2004 FLSA amendments. (# 44, Exh. 3) The Groton Town Code states that "[a]ny increase in wages or salaries under this section shall be effective only if ... approved by the Finance Committee and Board of Selectmen." (# 37, Exh.19, Art. II § 48–6(B)) In a letter dated April 25, 2005 to Rooney, the Board of Selectmen denied his requests for approval for the hourly designation. (# 44, Exh. 6) The Board of Selectmen stated that "[i]t is true that the Personnel Board adopted the new FLSA standards. After reviewing your actual duties with the Police Chief, as well as soliciting comments from Town Counsel, it was determined that your position and current duties are exempt under the Administrative Exemption of amended FLSA guidelines." (# 44, Exh. 6) With the Board of Selectmen having failed to approve the hourly designation, Rooney is an employee compensated on a salary basis under the plain meaning of the FLSA. *See, e.g., Auer,* 519 U.S. at 455–64, 117 S.Ct. 905; *O'Brien I,* 350 F.3d at 292–93; *Cycle Craft Co., Inc.,* 482

F.Supp.2d at 136–37; *Murphy*, 516 F. Supp.2d at 159–60.

### 2. Primary Duty

■ The next element upon which the Town bears the burden of proof in order for the plaintiff to be considered an exempt employee is that Rooney's primary duty is "management of the enterprise in which [he] is employed." 29 C.F.R. § 541.100(a)(2). In other words, his " 'primary duty' must be the performance of exempt work." 29 C.F.R. § 541.700(a). To be a "primary duty" it must be the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). According to DOL regulation, "[t]ypical management duties include interviewing, training, directing work, maintaining records, appraising work performance, handling employee complaints, and apportioning work." *Murphy*, 516 F.Supp.2d at 159 (citing 29 C.F.R. § 541.102). If the employee also performs nonexempt work, he or she is not precluded from being an exempt employee. 29 C.F.R. § 541.106(a). As the regulation makes clear by example, an assistant manager in a retail establishment can stock shelves, cook food, clean the premises, and attend to customers but still be considered an exempt executive. 29 C.F.R. § 541.106(b). On the other hand, a relief supervisor whose primary duty is nonexempt work but directs the work of other nonexempt employees when the regular supervisor is unavailable does not fall under the executive exemption. 29 C.F.R. § 541.106(c).

Factors to be considered in deciding an employee's primary duty are "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the

kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a). The determining factor of the primary duty is not the amount of time spent on a particular aspect of an employee's job. 29 C.F.R. § 541.700(b). Rather, the "major emphasis" in determining an employee's primary duty should be on the "job as a whole." 29 C.F.R. § 541.700(a). As such, employees spending less than fifty percent of their time on managerial aspects can nonetheless satisfy the primary duty requirement under other relevant facts of the case. 29 C.F.R. § 541.700(b).

"The question of how [employees] spen[d] their working time ... is a question of fact." *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986). In the instant case, there are no material facts in dispute regarding how Rooney spends his time. As the First Circuit noted, "supervision of other employees is clearly a management duty." *Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir.1982) (citing 29 C.F.R. § 541.102(b)). It is undisputed that Rooney supervises other officers. (# 1 ¶¶ 15–18, 22; # 2 ¶¶ 15–18, 22) He makes judgment calls regarding work that subordinates are to perform, exercises discretion in directing the work of subordinate employees, supervises employees under him, and has the authority to order in additional police personnel to work. (# 37 ¶¶ 57–61, 89) "Ensuring that [the policies of the police department] are carried out constitutes the 'very essence of supervisory work.'" *Donovan*, 672 F.2d at 226 (citing *Anderson v. Federal Cartridge Corp.*, 62 F.Supp. 775, 781 (D.Minn.1945), *aff'd*, 156 F.2d 681 (8th Cir.1946)). In this vein, Rooney oversees and supervises the issuance of search warrants which includes verifying the legality of such warrants as well as determining the safest way to execute the warrants, the necessary manpow-

er to carry out the warrant, and directing staff to carry out the warrants. (# 37 ¶ 65)

The plaintiff has also served as the internal affairs investigator for the Chief and the CIC[18]. (# 37 ¶¶ 64, 70, Exh.1 at 72–74) As the CIC, Rooney would direct the work of employees when incidents such as civil unrest or natural disasters arose. (# 37 ¶ 64, Exh.1 at 72–73) He also handles community complaints which require him to investigate civilian complaints against uniformed officers and thereafter submit a report to the Chief regarding his findings. (# 37 ¶ 66) In addition, Rooney has been involved in the disciplinary process at the Police Department. (# 37 ¶ 84) As a part of this process, the plaintiff has disciplined employees for rule and policy violations and has recommended disciplinary action for rules and regulations violations which the Chief considered. (# 37 ¶¶ 71, 84; # 37, Exh.10–13) Further, Rooney scheduled training for all subordinate officers in the Police Department. (# 37 ¶ 72)

The plaintiff spends the majority of his time as the Police Department's Court Officer. (# 37 ¶ 41; # 44 ¶ 11) In this capacity, he represents the Police Department and the Commonwealth of Massachusetts, acts as the prosecutor, presents testimony and evidence, meets with defendants, recommends findings and dispositions on civil and criminal matters, cross-examines witnesses and defendants, as well as works with and supervises case files in his office reviewing evidence and elements of crimes in preparation for court. (# 37 ¶¶ 44–53; # 44 ¶ 12) While the plaintiff contends there is a factual dispute regarding his authority to settle cases, the determination his primary duty does not rest on this single factor alone. As evidenced by the above non-exhaustive list of responsibilities that Rooney has as a Lieutenant, his primary duty is management.

Although the plaintiff's job *title* is insufficient to define his status as exempt, the Town's Lieutenant position description sheds *some* light on the analysis of the actual job duties listed above[19]. *See* 29 C.F.R. § 541.2. The Lieutenant position description is in excess of four pages long, thus, a brief overview of pertinent sections will suffice. Under the Lieutenant's "Statement of Duties" section, for example, the duty listed first is "[a]dministrative and supervisory work in directing police activities." (# 37, Exh. 8) Other sections also shed light on the issue: the "Supervision" section states that the Lieutenant "[s]upervises several divisions of the department;" the "Job Environment" section states that the Lieutenant will be required to "work outside normal business hours;" the "Essential Functions" section reads that the Lieutenant is "[r]esponsible for the supervision and overall control of all subordinate officers in the various shifts; responsible for their efficiency and effectiveness as members of the department; ... administers the department in the absence of the Chief of Police and Captain,"[20] for "[e]nsur[ing] compliance with department regulations, investigating internal complaints; maintains discipline and morale within the department," and "[c]oordinat[ing] all departmental training and ensures that all

---

18. Rooney notes that he has assumed the role of CIC only once in the time he has served as a Lieutenant. (# 44 ¶ 16)

19. Courts have used position descriptions to assist in the determination of an employee's exempt status. *See e.g., Cycle Craft Co., Inc.,* 482 F.Supp.2d at 137; *Nickell v. City of Law-* *rence, Kansas,* 352 F.Supp.2d 1147 (D.Kan. 2004).

20. Ever since Saball retired in August 2002, the position of Captain has been vacant at the Groton Police Department. (# 37 ¶¶ 17, 19–24)

members of the department are properly trained ....;" and in the "Recommended Minimum Experience" section, the Lieutenant's position required "eight (8) years of police experience with at least two (2) years as a sergeant ... [21]." (# 37, Exh.8)

The *Cycle Craft* case used a very similar job description to support the Court's grant of summary judgment based on the conclusion that the employee was exempt as an administrative employee under the FLSA. 482 F.Supp.2d at 137. That job description

> state[d] that the employee must have "the ability to develop and implement a[sic] overall Customer Service strategic plan," "[t]he ability to develop a clear business plan to support organizational changes ... that provide[s] efficiency and improve[s] customer service delivery," and, *inter alia,* "[i]dentify and expeditiously resolve delivery problems." The required qualifications included five years of both customer service management and as a supervisor.

*Id.* (quoting the position description of a "New Purchase/Customer Relations Manager").

Further, in the *Cycle Craft* case, the employee "work[ed] with various ... departments" to ensure compliance with purchase orders, "direct[ed other employees] to get a particular bike ready at particular times," "inspect[ed] work orders and, if they were not satisfactory, instruct[ed] the Service Manager concerning what needed to be done." *Id.* at 137–39.

The present case has many factual similarities to the *Cycle Craft* case wherein the employee was found to be exempt. *Id.* at 140. Although the *Cycle Craft* case analyzed the primary duty under the administrative exemption, the two standards are similar—the difference is that with the executive exemption, the primary duty must be management and with the administrative exemption, the primary duty must be related to assisting with the running of the business. *See, e.g., Pendlebury v. Starbucks Coffee Co.,* 2008 WL 763213, at *9 (S.D.Fla. Mar.13, 2008) (slip op.) ("The term 'primary duty' under [the administrative] exemption carries the same definition that it does for the executive exemption."). *Compare* 29 C.F.R. § 541.100(a)(2) *with* 29 C.F.R. § 541.200(a)(2); 29 C.F.R. § 541.700.

In *O'Brien I,* the First Circuit affirmed the grant of summary judgment as to "officers of supervisory rank" in a factually similar setting. 350 F.3d at 299. In that case, supervisory officers consisted of "Special Sergeant, Sergeant, Lieutenant, or Captain." *O'Brien I,* 350 F.3d at 292, n. 23. The focus in the First Circuit's opinion was on whether the supervisory officers were paid on a salary basis. *Id.* at 292–94 (holding that the supervisory officers were, in fact, compensated on a salary basis). Nonetheless, the First Circuit affirmed the district court's overall holding that supervisory officers were exempt under the FLSA. *Id.* at 294.

Judge Stearns recently granted summary judgment on the basis of comparable facts in *Murphy,* 516 F.Supp.2d 153. In that case, the Court held that "[s]ergeants and lieutenants are exempt from the FLSA's overtime provisions; detectives are not." *Id.* at 161. There, sergeants acted as "[s]upervisors during two of their four weekly shifts each month;" they directed "nine to ten patrol officers who are assigned to a shift;" "[t]hey work[ed] relatively free from supervision and exercise[d] their judgment and discretion without direct oversight by their commanding

---

**21.** It does not appear from the record that Rooney satisfied this criteria at least by virtue of his employment in Groton, although "an equivalent combination of education and experience" would also fit the bill.

lieutenants;" "[t]hey [were] often the only superior officers on duty at the station or on patrol;" "[t]hey direct[ed] the response to and the investigation of crimes and accidents;" "[t]hey [were] more highly compensated than patrol officers, and receive [d] additional compensation as supervisors." *Id.* at 159. That case did not specifically delimit a lieutenant's duties in the Town of Natick; however, presumably a lieutenant's job would encompass all the duties of a sergeant (and more) because a lieutenant is higher in rank. *See id.* at 159.

Rooney has substantially similar responsibilities as the superior officers in *Murphy.* The plaintiff supervises patrol officers, he is in charge during the Chief's absence, he is mainly free from the Chief's supervision, and he is compensated more generously consequent to the responsibilities accompanying his position. These factors weigh heavily in concluding that Rooney's primary duty is management.

■■ "The question whether [employees'] particular activities excluded them from the overtime benefits of the FLSA is a question of law. . . ." *Icicle Seafoods,* 475 U.S. at 714, 106 S.Ct. 1527 (citing 29 C.F.R. § 783 (1985)). As stated above, an employee does not have to spend all of his or her time—or even 50 percent of his or her time—on their primary duty to be considered a manager. *See* 29 C.F.R. § 541.700(a)-(b); *Donovan,* 672 F.2d at 226 ("[A]n employee can manage while performing other work, and . . . this other work does not negate the conclusion that his primary duty is management."). What matters is that management is his or her primary duty. 29 C.F.R. § 541.700(a). Accordingly, in light of the undisputed facts regarding Rooney's position description and his duties and their close resemblance to the management type duties listed in 29 C.F.R. § 541.102, the plaintiff's primary duty is "management of the enter-

prise in which [he] is employed." 29 C.F.R. § 541.100.

### 3. Directing the Work of Two or More Employees

The third element that the Town must show is that Rooney "customarily and regularly directs the work of two or more other employees." 29 C.F.R. § 541.100(a)(3). This factor is basically undisputed.

"Two full-time employees or the equivalent . . . is generally considered to mean 80 hours of work [per week] by subordinate employees." *Murray v. Stuckey's, Inc.,* 50 F.3d 564, 568 (8th Cir.), *cert. denied,* 516 U.S. 863, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995). In *Murray,* the Eighth Circuit held that even though "the company then fell on hard times, and . . . some of the managers . . . operated small rural stores on a skeletal basis in the winter," such employees still "customarily and regularly supervised the work of at least two other full-time equivalent employees" because these were "unusual circumstances." *Id.* at 569. According to the regulation, " 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. *See also Rozenblum v. Ocean Beach Properties,* 436 F.Supp.2d 1351, 1362 (S.D.Fla.2006).

Here, the plaintiff oversees the work of approximately fourteen (14) police officers, and therefore, the Town has satisfied the third prong. (# 37 ¶ 29) *See Cycle Craft Co., Inc.,* 482 F.Supp.2d at 137 (an employee who "managed three persons during his tenure" was exempt). Rooney reviews reports of subordinate officers, counsels officers, and makes recommendations to other officers how to improve report writing. (# 37 ¶ 67) He supervises the dispatchers to ensure that log entry categories were correct. (# 37 ¶ 85) Rooney disciplines his

subordinates when they violate rules (# 37 ¶ ¶ 71, 84, Exh.10–13); he has the authority to order in additional police personnel to work (# 37 ¶ 89); and he has served as the CIC and the internal affairs investigator (# 37 ¶ ¶ 64, 70, Exh. 1 at 72–74). Although Rooney spends the majority of his time as the Court Officer, he represents many of the other officers' cases in court— e.g., when another officer issues a citation, the plaintiff was the person responsible for "represent[ing] the officer who initiat[ed] the action." (# 37, Exh.1 at 232) As evidenced by the record and the lack of dispute raised by Rooney, it is clear that he "customarily and regularly direct[ed] the work of two or more other employees." 29 C.F.R. § 541.100. Thus, the third element in the executive exemption is satisfied.

*4. Hiring/Firing*

■ On August 23, 2004, the Department of Labor ("DOL") amended the regulations to include an added requirement for employees to satisfy the executive exemption[22]. *See* 29 C.F.R. § 541.100. *See also Murphy*, 516 F.Supp.2d at 159–60 (discussing the amendment). The fourth element that the Town must establish is that the employee "has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change or status of other employees are given particular weight." 29 C.F.R. § 541.100. *See Murphy*, 516 F.Supp.2d at 160 ("[T]he most recent version of the DOL regulation ... creates the additional requirement that to be an 'executive,' an employee must have the authority to hire or fire other employees, or to make recommendations regarding hiring and firing that are given 'particular weight' by the final decision maker.") (quoting 29 C.F.R. § 541.100(a)(4)). On the facts of

this case, the addition of the fourth element does not alter the analysis in any significant way. *Cf. id.* at 159 ("Plaintiffs are hard pressed to dispute that Sergeants and Lieutenants fall within the executive exemption under both the pre–2004 and post–2004 iterations of the DOL regulations."). If this element

> were to be interpreted too literally, virtually no superior officer would be exempt under the FLSA, a result contrary to the purpose of an Act intended to protect ordinary wage earners who have little or no discretion over the manner in which they perform their jobs, and not those who make and enforce workplace rules. Superior officers, by virtue of their independence from close supervision and their powers to direct the work of their subordinates are 'executive' employees within any meaningful sense of the term.

*Murphy*, 516 F.Supp.2d at 160.

Superior officers play an integral role in the hiring, firing, promotion, and discipline process. *Id.* Further, Rooney's suggestions and recommendations may still be deemed to have "particular weight" even if the Chief's decision carries more weight. 29 C.F.R. § 541.105. Some factors to consider in the determination of "particular weight" include whether it is a part of Lieutenant Rooney's job description to make recommendations, the frequency of such recommendations, and the frequency with which the recommendations are relied on by the Chief. *Id.*

To the extent that it is argued that Lieutenant Rooney does not participate in the hiring, firing, advancement, or promotion to the frequency required of the regulation, it should be noted that the Groton Police Department is relatively

---

**22.** Further, the minimum salary compensation level was raised from $250 to $455. *See*

29 C.F.R. § 541.100. *See also Murphy,* 516 F.Supp.2d at 159.

small. Whereas the Groton Police Department employed twenty-five people, including Rooney and Chief Mulhern, as of September 16, 2006 (# 48, Exh.2), the Natick Police Department employed substantially more officers, and the Sergeants and Lieutenants at the Natick Police Department were held to be exempt from FLSA overtime compensation. *See Murphy*, 516 F.Supp.2d at 156 (fifty-five current and former officers filed FLSA claims against the Town of Natick, the Natick Police Department, and the Natick Chief of Police). This factor should be taken into account when determining the frequency of recommendations made by the plaintiff. It is reasonable to assume that generally a smaller police department would have correspondingly fewer new hires, fires, and promotions.

Here, while these responsibilities are not listed in his job description, Rooney has acted as a member of an interview panel, ranked applicants on account of their suitability for the position, discussed the merits of applicants with Mulhern, made applicant recommendations to the Chief regarding the applicant's suitability, discussed the potential promotion of a Patrolman to the rank of Sergeant, and discussed the assignment of an officer to an administrative position such as a Detective and/or School Resource Officer. (# 37 ¶¶ 75–78, 80–83) The Chief took the plaintiff's recommendations into consideration when he made the determination of who to appoint or promote. (# 37 ¶¶ 79–83; # 44 ¶ 23) Mulhern has stated that he

> ... strongly considered Mr. Rooney's recommendations regarding potential new hires of the Police Department, gave Mr. Rooney's opinions regarding the applicants' (sic) considerable weight, and [he] would factor in Mr. Rooney's comments when [he] made the determination of who to recommend for appointment to the Board.

Affidavit of Robert L. Mulhern # 39 ¶ 24. The plaintiff counters, averring that "some hirings were done without any input on [his] part" and "[o]ther personnel decisions made by Chief Mulhern were made without placing weight on my comments." (# 44 ¶ 23)

Rooney argues that, because Patrolmen "could just as easily" practice the same hiring functions as he does (# 43 Part III.C.5), he should not be regarded as an "employee ... whose suggestions and recommendations as to the hiring, firing, advancement, promotion ... are given particular weight." 29 C.F.R. § 541.100. However, the regulation does not state that Rooney must be the only officer in the department whose recommendations and suggestions are given particular weight, but rather that "a higher level manager's recommendation [may have] more importance." 29 C.F.R. § 541.105.

The plaintiff also contends that when he had discussions with the Chief on a particular occasion about promoting an officer to the Sergeant position, he recommended someone who was not ultimately chosen for the position. According to Mulhern, the plaintiff "initially recommended" one individual as the person best suited for promotion, but after being informed that the officer he recommended "was not the top candidate at the completion of the promotional process," Rooney then recommended a second individual who was, in fact, appointed to the Sergeant position. (# 48 ¶ 19)

In any event, the regulation does not require that the ultimate decision to hire or promote an employee aligns with the recommendation or suggestion of the exempt employee. Rather, the regulation requires only that Rooney's recommendations and suggestions be given "particular weight." 29 C.F.R. § 541.100. It is not necessary for the exempt employee to play

a role in every single hire, fire, or promotion. *See* 29 C.F.R. § 541.105. For example, where "Crew Leaders consistently testified that they had no responsibility for recruiting catchers, no responsibility for making recommendations on the hiring or termination of individuals, and no power to hire or fire an employee, even within restricted guidelines," summary judgment would not be appropriate. *Davis v. Mountaire Farms, Inc.,* 453 F.3d 554, 558 (3rd Cir.2006) (reversing a grant of summary judgment). But, as here, where Rooney played an integral role in the new hire and promotion process on multiple occasions, summary judgment is appropriate. Taking the plaintiff's job functions into account, as well as Mulhern's testimony, there is no genuine issue of material fact as to whether the Town has shown that Rooney's suggestions and recommendations are given particular weight.

The defendants have satisfied their burden of showing that the plaintiff is an exempt executive employee under the FLSA by proving the existence of the four required elements in 29 C.F.R. § 541.100(a)(1)-(4). Rooney is not entitled to overtime benefits under the FLSA, and summary judgment should enter for the Town.

### B. Administrative Exemption

In the alternative, assuming, *arguendo,* that Rooney is not an exempt executive employee, he is nevertheless an exempt administrative employee. *See* 29 C.F.R. § 541.200; *Nickell v. City of Lawrence, Kansas,* 352 F.Supp.2d 1147, 1164–65 (D.Kan.2004) ("Since the court has found that the Plaintiffs are executive employees exempt from the overtime provisions of the FLSA, thereby awarding summary judgment to the Defendant, the court will not address the parties' arguments regarding the applicability of the administrative exemption."). As an exempt administrative employee, the plaintiff is not entitled to the benefit of the FLSA overtime statute. Title 29 U.S.C. § 213(a)(1). Similar to the executive exemption, the Town has the burden of demonstrating that Rooney is an exempt administrative employee. *See Reich,* 44 F.3d at 1070.

The Town must show three elements for the plaintiff to be classified as an administrative employee. First, the employee must be "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week;" second, the "primary duty" of the employee must be "the performance of office or non-manual work directly related to the management or general business operations of the employer;" and third, the employee's "primary duty" must "include[ ] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(1)-(3). Each element shall be discussed seriatim.

#### 1. Salary Basis

The first element in proving applicability of the administrative exemption, that Rooney be compensated on a "salary basis," mirrors the standard in the executive exemption. *Compare* 29 C.F.R. § 541.100(a)(1) *with* 29 C.F.R. § 541.200(a)(1). As laid out in detail hereinabove, it has been determined that the plaintiff is compensated on a "salary basis," and therefore, the Town has shown that Rooney meets the requirement for this element of the administrative exemption.

#### 2. Primary Duty

Similar to the analysis in the executive exemption, Rooney's primary duty must be "the performance of office or non-manual work directly related to the management or general business operations of the employer." 29 C.F.R. § 541.200(a)(2). The key difference in the administrative

exemption as compared to the executive exemption is that the primary duty must be "directly related to assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a). *See also Shockley v. City of Newport News,* 997 F.2d 18, 28 (4th Cir.1993) ("The same principles discussed above with regard to determining whether an employee's primary duty is management apply as well in analyzing whether an employee's primary duty is administration, albeit focused on administrative as opposed to managerial duties."); *Cycle Craft Co., Inc.,* 482 F.Supp.2d at 137 (applying the FLSA administrative exemption to a "New Purchase/Customer Relations Manager" of a motorcycle shop).

The primary duty requirement under the administrative exemption is also similar to the primary duty requirement under the executive exemption in that the "major emphasis" in determining an employee's primary duty should be on the "job as a whole." 29 C.F.R. § 541.700(a). As such, employees spending less than fifty percent of their time on managerial aspects can nonetheless satisfy the primary duty requirement using other relevant facts of the case to support this position. 29 C.F.R. § 541.700(b).

As has been discussed, Rooney's primary duty is directly related to assisting with the running of the Groton Police Department. In that regard, the plaintiff scheduled training for subordinate officers (# 37 ¶ 72), supervised other officers (# 1 ¶¶ 15–18, 22; # 2 ¶¶ 15–18, 22), oversaw and supervised the issuance of search warrants which included verifying the legality of such warrants as well as determining the safest way to execute the warrants, the necessary manpower to carry out the warrant, and directing staff to carry out the warrants (# 37 ¶ 65), acted as the CIC and the internal affairs investigator (# 37 ¶¶ 64, 70, Exh.1 at 72–74), handled community complaints (# 37 ¶ 66), disciplined employees (# 37 ¶¶ 71, 84, Exh.10–13), assisted in the new hire and promotion process (# 37 ¶¶ 75–78, 80–83), and spent the majority of his time as the Police Department's Court Officer representing other officers' cases as well as the Commonwealth of Massachusetts. (# 37 ¶¶ 41, 44–53; # 44 ¶¶ 11–12) All of these functions are directly related to assisting with the running of the Police Department. Simply put, Rooney's employment is geared towards the management of, and is directly related to assisting in the operation of, the Groton Police Department. The regulation defines most of the plaintiff's above-listed activities as "work directly related to management or general business operations." 29 C.F.R. § 541.201(b) (defining the following as duties falling under the administrative exemption: "quality control; ... safety and health; personnel management; human resources; ... public relations, government relations; ... legal and regulatory compliance; and similar activities").

In the *Cycle Craft* case, it was determined that an employee was exempt under the administrative prong because he "resolve[d] delivery problems," "attended management meetings," and "direct[ed employees] to get a particular bike ready at particular times," among a few other responsibilities. 482 F.Supp.2d at 137–38 (holding that employee's "descriptions of his job responsibilities actually support a finding that his duties met the exempt employee standard"). In addition, the Fourth Circuit has held that an Ethics and Standards Lieutenant was exempt under the administrative exemption, but that Media Relations Sergeants were not. *Shockley,* 997 F.2d at 28–29. The Court drew a distinction between the two types of officers and said that while the Ethics and Standards Lieutenant "devoted her time to the investigation of complaints against other officers," *id.* at 28, the Media Relations

Sergeants "spent half their time on the 'crime line,' answering the phone, taking tips, and passing them on to the right department." *Id.* In this case, Rooney's responsibilities are more closely analogous to the Ethics and Standards Lieutenant's responsibilities.

Under the case law and applicable regulations, the Town has satisfied its burden of showing that Rooney's primary duty is directly related to assisting with the running of the Groton Police Department.

### 3. Discretion and Independent Judgment

■ The third element that the Town must show to prove that Rooney falls under the administrative exemption category is that his "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). As defined, "the exercise of discretion and independent judgment" refers to "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). " '[M]atters of significance' refers to the level of importance or consequence of the work performed." *Id.* This question involves the primary duties discussed above and "then asks a qualitative question as to the role that the employee played in exercising those responsibilities." *Cycle Craft Co., Inc.,* 482 F.Supp.2d at 139.

Rooney exercises discretion and independent judgment on significant responsibilities. The plaintiff makes judgment calls regarding work that subordinates are to perform, exercises discretion in directing the work of subordinate employees, supervises employees under him, decides—using his own judgment—to which "routine police intervention" calls he will respond, and has the authority to order in additional police personnel to work. (# 37 ¶¶ 57–61, 87–89) As the Court Officer, Rooney exercises independent judgment—without intrusion from the Chief—when he prepares for and presents cases, disposes of cases, and makes penalty recommendations to the Court. (# 37 ¶ 54) The plaintiff verifies the legality of search warrants, determines the safest way to execute them, decides the necessary manpower to carry them out, and directs the staff to carry out the warrants. (# 37 ¶ 65) Rooney disciplines other police officers, action which involves discretion because he is required to determine whether a sanction is appropriate and how to administer the discipline. (# 37 ¶¶ 71, 84; # 37, Exh.10–13) As his job description states, the plaintiff's responsibilities include "overall supervision of the Police Department in the absence of the Chief of Police"; "[a]dministrative and supervisory work in directing police activities"; "[f]requent application of independent judgment required to solve problems and situations not falling clearly or concisely with limitations of established standards or precedents"; "work[ing] outside normal business hours," and that he will have "access to all department-related confidential files." (# 37, Exh. 8) When the Chief is absent, Rooney is ultimate decision-maker.

Similarly, in the *Cycle Craft* case, the employee was held to satisfy this requirement because he "would inspect work orders and, if they were not satisfactory, instruct the Service Manager concerning what needed to be done . . . [h]e was the primary contact person with customers to make sure they were happy with their order . . . [h]e attended management meetings," and "he had the authority to direct the Service Manager . . . to get a particular bike ready." *Cycle Craft Co., Inc.,* 482 F.Supp.2d at 139 ("These facts alone support a finding that no genuine issue of material fact exists as to whether

Cash's position involved discretion."). The above non-exhaustive list of Rooney's responsibilities reflects that there is no genuine issue of material fact as to whether he uses discretion and independent judgment in matters of significance.

Accordingly, the Town has satisfied its burden of showing that Lieutenant Rooney exercises discretion and independent judgment as well as the other two requirements under the administrative exemption. No genuine issues of material fact exist, thus, Rooney is exempt from the FLSA overtime provisions as an administrative employee and, consequently, is not entitled to overtime compensation.

### C.  First Responder Regulation

■ The "[p]laintiff genuinely disputes the factual assertion that his primary duty is either managing the department or performing administrative work and he argues that, as a first responder, his supervisory authority is irrelevant to the FLSA analysis." (# 43 at 7) Rooney claims that he falls under the purview of the first responder regulation in 29 C.F.R. § 541.3(b).  In pertinent part, this regulation provides that

> [t]he section 13(a)(1) [FLSA] exemptions and the regulations in this part also do not apply to police officers, ... regardless of rank or pay level, who perform work such as ... preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals ...; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

29 C.F.R. § 541.3(b)(1).

> The regulation goes on to say that
> [s]uch employees do not qualify as exempt executive employees because their primary duty is not management of the

enterprise in which the employee is employed.... Thus, for example, a police officer ... whose primary duty is to investigate crimes ... is not exempt under section 13(a)(1) of the Act merely because the police officer ... also directs the work of other employees in the conduct of an investigation....

29 C.F.R. § 541.3(b)(2).

Similarly 29 C.F.R. § 541.3(b)(3) provides that first responders "do not qualify as exempt administrative employees because their primary duty is not the performance of work directly related to the management or general business operations of the employer."

In arguing that the regulation applies to him, Rooney "acknowledges the contrary authority of Judge Stearns' opinion in" *Murphy*, 516 F.Supp.2d at 160, but asserts that "Judge Stearns did not even cite the first responder regulation." (# 43 at 11 n. 6) Judge Stearns did, in fact, cite to the first responder regulation and applied it to police detectives but not to superior officers such as sergeants and lieutenants. *Murphy*, 516 F.Supp.2d at 160; *see also Crawford v. Lexington–Fayette Urban County Gov't*, No. 06–299–JBC, 2008 WL 2598345, at *5 (E.D.Ky. June 25, 2008) ("Murphy demonstrates that certain first-responder officers can be exempt under the new regulations.  It further indicates that the analysis of whether an employee's primary duty is management is key in determining whether the 'first responder' regulation will apply.").

The key point is that it is clear from the language of the first responder regulation that it should, without a doubt, apply to first responders, i.e., those officers who have a primary duty of preventing crime. *See* 29 C.F.R. § 541.3(b).  Rooney categorically states:

> My primary duty as a Groton police officer has been law enforcement.  My

primary duty has never been managing the department. That is the function of the Chief. Neither has my primary duty been to provide administrative services to the department. I am a police officer who holds the rank of Lieutenant. Affidavit of John F. Rooney # 44 ¶ 10.

Such broad statements, however, do not advance the analysis that needs to be undertaken. Indeed, at a certain level of abstraction, all police officers could be viewed as first responders. However, such a perspective would undermine the Department of Labor's specifically stated intent not to depart from established case law. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed.Reg. 22122, 22129 (April 23, 2004).[23] *See also, e.g., Crawford,* 2008 WL 2598345, at *6 (holding that "the 'first responder' regulation ... does not preclude the [Division of Community Corrections] correctional officers from being exempt under the FLSA regulations," and "[t]he officers' exempt status turns on whether their salary and duties meet the requirements of the regulations"). *See also* Wage and Hour Opinion Letter, FLSA 2005–40 (Oct. 14, 2005), *available at* 2005 WL 3308611 (concluding that a police lieutenant, police captain, and fire battalion chief were exempt because they met the requirements set forth in the regulations and were not the types of first responders that the first responder regulation contemplated). The first responder regulation was promulgated in response to and as a result of "commenters (sic) ... expressing concerns about the impact of the proposed regulations on police officers .... [and]

significant federal court litigation to determine whether such employees meet the requirements for exemption as executive, administrative or professional employees." 69 Fed.Reg. at 22129. The appropriate inquiry lies in whether Rooney's salary and duties satisfy the regulations in 29 C.F.R. §§ 541.100, 541.200. *See Crawford,* 2008 WL 2598345, at *3 (citing 29 C.F.R. § 541.2 for the proposition that "[t]he exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations").

There may be times when Rooney participates in crime prevention activities and, of course, the overall purpose of the Police Department is to prevent crime. However, the plaintiff's primary duty is none of those listed in the first responder regulation, 29 C.F.R. § 541.3(b)(1). For the reasons discussed at length herein, to wit, that he falls under the executive and/or administrative exemption, the first responder regulation in 29 C.F.R. § 541.3(b)(1) does not apply to Rooney.

### VII. Recommendation

For all the reasons stated, I RECOMMEND that Defendants Town Of Groton And The Groton Board Of Selectmen's Motion For Summary Judgment (# 31) be ALLOWED with respect to Counts I and II of the complaint and that summary judgment enter on those counts. I FURTHER RECOMMEND that the case be REMANDED to the Middlesex Superior Court for an adjudication of the state law claims contained in Counts III through IX of the complaint.

---

**23.** In his brief, the plaintiff cites four cases referenced by the Department of Labor in its notice of final rule. (# 43 at 10; 69 Fed.Reg. at 22129) These cases support the proposition that "[m]ost of the courts facing this issue have held that police officers ... are not exempt because they usually cannot meet the requirements for exemption as executive or administrative employees." 69 Fed.Reg. at 22129. These cases are factually distinct from the case at hand.

### VIII.  Review by the District Judge

The parties are hereby advised that pursuant to Rule 72, Fed.R.Civ.P., any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed.R.Civ.P., shall preclude further appellate review.  *See Keating v. Secretary of Health and Human Services,* 848 F.2d 271 (1st Cir.1988); *United States v. Emiliano Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Aug. 25, 2008