# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2462

_____

| | | |
|---|---|---|
| Dwight M. Clark, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Steve Long; Gene Stubblefield; | * | Eastern District of Missouri. |
| Larry Rowley; Shirley McClary; | * | |
| Frank Wilson; Donna Brown; | * | |
| George Lombardi, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: April 12, 2001

Filed: July 9, 2001

_____

Before BOWMAN and FAGG, Circuit Judges, and VIETOR,[1] District Judge.

_____

BOWMAN, Circuit Judge.

_____

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa, sitting by designation.

Dwight M. Clark appeals from the order of the District Court[2] granting judgment as a matter of law (JAML) to the defendants[3] at the close of Clark's presentation of his case to the jury on his claim under 42 U.S.C. § 1983 (Supp. IV 1998) alleging violations of his First Amendment rights. We affirm.

We review the decision to grant JAML de novo, applying the same standard as did the District Court. Miller v. City of Springfield, 146 F.3d 612, 614 (8th Cir. 1998). For that standard, we turn first to the language of Federal Rule of Civil Procedure 50(a)(1):

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Further, a court called upon to rule on a motion for JAML may not resolve factual disputes or make credibility determinations and must view all evidence in the light most favorable to the nonmoving party. Kinserlow v. CMI Corp., 217 F.3d 1021, 1025 (8th Cir. 2000). The nonmovant receives the benefit of all reasonable inferences that may be drawn from the evidence, but those inferences may not be based solely on speculation. Id. at 1026. JAML should be granted only if, after evaluating all the

---

[2]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

[3]Shirley McClary is no longer an employee of the Missouri Department of Corrections and is not represented by the Missouri Attorney General in this appeal. Although counsel withdrew from representing McClary before trial, the Defendants' Motion for Judgment as a Matter of Law argues that Clark failed to make a case against McClary, as well as the other defendants. Our holding in favor of the defendants/appellees also applies to McClary.

evidence in the manner described above, no reasonable juror could have found for the nonmoving party. Fed. R. Civ. P. 50(a)(1). Mindful of these standards, we recite the facts of this case.[4]

Clark "proclaim[s] Islamism" as his religion, Tr. at 24, and is a member of the Moorish Science Temple of America, id. at 25. Under the tenets of his faith, Clark testified, "I don't handle pork. I don't eat it. I don't touch it." Id. at 29. Beginning in October 1996, and at all times relevant to this appeal, Clark was incarcerated at Missouri Eastern Correctional Center (MECC). When he arrived at MECC, he was assigned to wash pots and pans in the prison kitchen. Around March 6 or 7, in a year not clearly identified,[5] a prison cook "brought some pans back there that contained pork meat" to be cleaned. Id. at 33. Clark, who was the only pan washer present, told the cook, "I don't do pork." Id. The cook left. A corrections officer (not named as a defendant in Clark's complaint) arrived and told Clark that he would have to "lock [Clark] up" on the instructions of a sergeant (also not named as a defendant) if Clark did not wash the pans. Id. at 34. Another Muslim inmate pan washer who had been sent to the kitchen said he was not "going to the hole," and so he and Clark washed the pans. Id.

After the pan-washing incident, Clark left the kitchen and went to the "police office," id., where he confronted Frank Wilson, guard supervisor at MECC and the first of the named defendants with whom Clark had contact in Clark's chronology of the events leading to his lawsuit. Clark told Wilson, "I am a Muslim. I don't clean pork." Id. at 35. Wilson then handcuffed Clark, apparently believing Clark had refused to wash the pans. Clark told Wilson he had washed the pans and was there only to find

---

[4]Clark was the only witness called before he rested his case and, therefore, his testimony provides the only evidence supporting his claim.

[5]In his brief, Clark says the date of the incident was May 6, 1997, but that was not his testimony.

out who was ordering Muslims to wash pots and pans in which pork had been cooked. According to Clark, Wilson said that he was responsible, "[b]y order of the superintendent," whom Clark understood to mean defendant Gene Stubblefield, superintendent at MECC. Id. Clark then left, evidently having been released from the handcuffs after telling Wilson that he had washed the pans. As he left, Wilson told him, "And if there are any more, you better do them too." Id. at 36. The next day, Clark filed an Informal Resolution Request (IRR) with defendant Donna Brown, Clark's unit supervisor. Twenty-eight days later, when Clark learned the kitchen would be serving pork, he went to speak with Brown again and asked her to intervene so that he would not have to wash any pans in which pork had been cooked. She made a call and then told Clark, in his words, "Mr. Clark, if you can't wash pork pans, you can't make $30 a month," referring to the fact that most jobs at MECC paid much less. Id. There was no evidence that Clark washed any "pork pans" on that day.

At some point, Clark filed a formal grievance regarding the March incident. In response, Stubblefield proposed that Clark could either wear boots, gloves, and goggles when washing pans that had contained pork or else get a different job in the prison. Clark appealed to defendant Steve Long, assistant director of the Missouri Department of Corrections; the appeal was denied. Although the timing is unclear, Clark testified that he spoke with defendant Larry Rowley, an associate superintendent at MECC, two times: once to complain about the amount of work he was expected to do by himself, apparently unrelated to pans that had contained pork (Clark testified that Rowley responded on the spot by raising his pay from $7.50/month to $30.00/month), and once to complain that a MECC employee, unidentified by Clark in his testimony, threw a pair of gloves at him.[6] In an interoffice memorandum from Rowley to Stubblefield, Rowley said that he had discussed the "issue" with George Lombardi, an assistant

---

[6]In the defendants' JAML motion, they said that Clark testified that defendant McClary threw the gloves. That is not in the trial transcript; in fact, Clark did not identify McClary by name anywhere in his testimony.

director of the Department of Corrections, who "support[ed] [Rowley's] recommendation that the cleaning crew be required to clean any time requested or as detailed in their job duties." Id. at 43. There was no evidence, however, of any occasion other than the March incident recounted by Clark when he was required upon threat of discipline, or otherwise forced, to wash pots or pans that had contained pork. Further, Clark testified that he was never disciplined for refusing to wash pans. Clark rested his case after his own testimony, following a discussion among counsel for the parties and the court wherein the judge questioned the relevance of the proffered testimony of two witnesses Clark had proposed to call.

We conclude that this evidence, even with reasonable inferences that may be drawn from it, could not support a verdict for Clark on his First Amendment claim against the named defendants. There was no evidence that any of the defendants compelled Clark during the March incident (or afterwards, for that matter) to wash pans in which pork had been cooked. The actions of the defendants about which Clark complains all occurred *after* the only pan-washing episode about which he testified. "In order to establish a violation of constitutional rights under § 1983, the plaintiff must prove that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury." Butler v. Dowd, 979 F.2d 661, 669 (8th Cir. 1992), cert. denied, 508 U.S. 930 (1993). But it was the unnamed guard and not any of the defendants who threatened Clark with discipline if he did not wash the pans; he was required to wash those pans irrespective of his later dealings with the defendants. Clark would have us speculate that he continued to wash pans in which pork had been cooked after the March incident, but there was no evidence of that, notwithstanding that Clark's sole witness—himself—was perhaps in the best position to know of and testify to such incidents. Clark failed to make a case that the defendants had "direct responsibility for" the only alleged violation of his First Amendment rights to which he testified—the March pan-washing incident. Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990) (concluding that defendant prison officials could be subject to suit under § 1983

where plaintiff inmate proffered evidence of continued violations of the rights asserted in his complaint even after he had filed grievances).

Notwithstanding the dearth of evidence supporting his claim, Clark maintains that we should reverse the JAML because of the court's "failure to give [Clark] the opportunity to correct deficiencies in his proof" before ruling on the defendants' motion for JAML.[7] Brief for Appellant at 10. Clark relies on this language from the Advisory Committee Notes to the 1991 amendment of Rule 50(a) to support his argument: "In no event, however, should the court enter judgment against a party who has not been apprised of the materiality of the dispositive fact and been afforded an opportunity to present any available evidence bearing on that fact." An advisory committee note, of course, does not have the force of law, and to the extent the opinions Clark cites from other circuits may be read to put the onus on the court to affirmatively tell the plaintiff in all cases that he has failed to make his case before a JAML motion may be granted (and we think such a reading is a stretch), they are not binding on this court. See Morrison Knudsen Corp. v. Fireman's Fund Ins. Co., 175 F.3d 1221, 1260 (10th Cir. 1999); Waters v. Young, 100 F.3d 1437, 1441 (9th Cir. 1996). But assuming without deciding that the Eighth Circuit would require a district court to give a plaintiff notice of the deficiencies in his case before JAML could be granted, we believe Clark had such notice.

As we noted above, when Clark was finished testifying, the court questioned the relevancy of his remaining witnesses, and the following colloquy between Clark's counsel and the court ensued:

---

[7]Clark also complains about the court's decision to grant JAML before the defendants put on their case, citing cases that discourage the practice. Rule 50(a)(1), however, clearly contemplates such an early decision.

COUNSEL: Mr. Clark testified to Mr. Lombardi, who wrote a memorandum stating that: That inmates are to wash pots and pans on the clean-up crew. Period.

THE COURT: Right. I heard him say that, but *I didn't hear him say or testify that he has had to wash these pots and pans. He testified about one incident.* I mean, I understand that he's still -- or that he has washed and continued to work as a pot and pan washer. Well, I mean it's not real clear to me where you're going with this.

Tr. at 69-70 (emphasis added). Immediately after this, notwithstanding what the court told him, Clark's counsel rested his case and moved for JAML, presumably understanding the standards of a Rule 50(a) motion. Granted, the discussion above did not occur in the context of the defendants' motion for JAML. But in these circumstances it is clear that Clark had all the information necessary to put him on notice that the court did not think he had made his case. The court identified for counsel—before he rested his case—precisely what was lacking in the proof of his claim. After he decided to rest anyway, and made his own oral motion for JAML (which was denied), the defendants announced their intention to file a motion for JAML. The court instructed the Assistant Attorney General to file her written motion the next morning. She did so, with Clark receiving a copy, and the court heard arguments from both sides. The court then ruled from the bench in the defendants' favor. At no time, despite having ample opportunity, did counsel ask the court for leave to recall Clark or to reopen his case in order to put on evidence that Clark now says would have proved his § 1983 claim against the named defendants. In other words, Clark never sought the opportunity he now says he was denied.

The defendants also assert (1) that they are entitled to qualified immunity because the constitutional right Clark asserts is not clearly established (distinguishing washing pans that have contained pork from "handling" pork); (2) that Clark's religious beliefs regarding pork are not sincerely held; and (3) that Clark could have opted for

-7-

a job other than pan washer but chose not to in order to make more money. Our holding that Clark failed to make his case against these defendants rests on very solid ground. Therefore, we see no need for an alternate holding and decline to consider the defendants' other arguments.

The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.