IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 23, 2008

No. 08-10662
Summary Calendar

Charles R. Fulbruge III
Clerk

CATHERINE LOVELADY; DIANA F. SCHUMACHER; MARGIE LEWIS,

Plaintiffs–Appellants,

DAWN HILL,

Appellant,

v.

ALLSUP'S CONVENIENCE STORES, INC., a New Mexico Corporation;
LONNIE D. ALLSUP, an Individual; BARBARA J. ALLSUP, an Individual,

Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:07-CV-130

Before KING, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Catherine Lovelady, Diana Schumacher, Margie Lewis, and Dawn Hill
appeal the grant of summary judgment in favor of Allsup's Convenience Stores,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Inc., Lonnie Allsup, and Barbara Allsup (collectively Allsup's). The district court ruled that Lovelady's claims were barred by the applicable statute of limitations and that Lovelady, Schumacher, and Lewis were exempt employees under the Fair Labor Standards Act (FLSA).[1] We affirm.

I

Lovelady, Schumacher, and Lewis sued Allsup's for unpaid overtime allegedly due under the FLSA. Appellant Hill "opted in" to this matter by filing a Consent to Sue form with the district court. Appellants alleged that Allsup's misclassified all of its store managers as exempt under the Act.

Allsup's is a privately held corporation that operates over 300 convenience stores in various locations, including Texas and New Mexico. Each appellant is a store manager at a different Allsup's convenience store location. Allsup's classifies its store managers as exempt, salaried employees.

Allsup's maintains a written job description that lists the duties and responsibilities of its store managers. Those duties and responsibilities include: 1) preparation, analysis, and evaluation of store paperwork; 2) management and supervision of store clerks and assistant managers, including scheduling, training and counseling; 3) ordering all of the store's merchandise, ensuring accurate inventory counts, and monitoring delivery of the store's goods and products; 4) management of store operations, such as ensuring that the store meets high standards of general cleanliness, controlling expenses for supplies, and maintaining customer relationships; and 5) maintaining store security by ensuring compliance with cash control procedures, investigating inventory discrepancies, and training employees on security policies and procedures.

Schumacher and Lewis testified that they received a predetermined, weekly salary of at least $455 per week regardless of the number of hours they

---

[1] 29 U.S.C. § 201.

worked, were ultimately responsible for the day-to-day operation of their respective stores, supervised between four and eight employees, and made recommendations on hiring and firing, which were generally followed by management.

The district court granted summary judgment in favor of Allsup's, holding that the appellants were exempt employees under the FLSA. The district court also ruled that Lovelady's claims were barred by the applicable statute of limitations.[2] Lovelady does not appeal this ruling. Accordingly, and because Hill only "opted in" to this matter, we need only consider whether Schumacher and Lewis were exempt employees under the FLSA.

## II

This court reviews a grant or denial of summary judgment de novo, applying the same standard as the district court.[3] Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[4] "Any reasonable inferences are to be drawn in favor of the non-moving party."[5]

## III

The FLSA overtime pay requirements do not apply to those employees who work in a "bona fide executive, administrative, or professional capacity" as defined by the Department of Labor (DOL).[6] An "employee employed in a bona

---

[2] 29 U.S.C. § 255(a).

[3] Robinson v. Orient Marine Co. Ltd., 505 F.3d 364, 365 (5th Cir. 2007) (citing Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 507 (5th Cir. 2003)).

[4] FED. R. CIV. P. 56(c).

[5] Robinson, 505 F.3d at 366 (citing Gowesky, 321 F.3d at 507).

[6] See 29 U.S.C. § 213(a)(1).

fide executive capacity" is an employee: 1) compensated on a salary basis, not less than $455 per week; 2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; 3) who customarily and regularly directs the work of two or more other employees; and 4) who either has the authority to hire or fire other employees or their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.[7]

## A

There is no dispute that Lewis and Schumacher were each compensated on a salary basis in excess of $455 per week. Lewis and Schumacher also testified that their salaries were never reduced for any reason. Nevertheless, Lewis and Schumacher argue that the reduction-of-bonus provisions within Allsup's' store managers bonus plan constitutes an impermissible docking of pay and destroys the exempt status of store managers. We disagree.

Deductions or reductions from bonus payments do not affect an employee's status as an exempt employee so long as the requisite minimum $455 salary is paid. "An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis."[8] "The prohibition against improper deductions from the guaranteed salary under 29 C.F.R. § 541.602(b) does not extend to such additional compensation provided to exempt employees."[9] Therefore, Allsup's' management bonus policy does not

---

[7] 29 C.F.R. § 541.100(a).

[8] 29 C.F.R. § 541.604(a).

[9] Dept. of Labor, Wage and Hour Div. Op. Letter, FLSA2006-24 (July 6, 2006) available at http://www.dol.gov/esa/whd/opinion/FLSA/2006/2006_07_06_24_FLSA.htm.

result in impermissible deductions that destroy Lewis's and Schumacher's exempt status.

## B

Allsup's also demonstrated that Lewis's and Schumacher's primary duty was the management of the enterprise in which they were employed. Generally, "management" activities include:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[10]

Lewis and Schumacher argue that they are not exempt because they were required to perform both exempt and non-exempt work. But "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met."[11] In fact, "[e]xempt work may be an employee's primary duty even though such work occupies less than half her time 'if the other pertinent factors support

---

[10] 29 C.F.R. § 541.102.

[11] 29 C.F.R. § 541.106.

such a conclusion.'"[12] We have directed lower courts that "the essence of the test is to determine the employee's chief or principal duty."[13]

Lewis and Schumacher testified that, in addition to the authority to make hiring and firing recommendations, their job duties included training employees, dealing with vendors, disciplining employees, creating work schedules, handling employee grievances, ordering the inventory for their stores, ensuring compliance with Allsup's' policies and procedures, ensuring the accuracy of employee time records, controlling and minimizing expenses, and recommending promotions of clerks to assistant managers. While they performed some of the same tasks as non-exempt store clerks, Lewis's and Schumacher's principal duty was to manage the day-to-day operations of their respective stores. Therefore, we agree with the district court that management was their primary duty.

C

Allsup's has also shown that Lewis and Schumacher customarily and regularly directed the work of two or more other employees. Specifically, Schumacher testified that she supervised four to eight employees, and Lewis testified that she usually supervised at least five employees. They further testified that their stores were allocated enough hours that they regularly supervised at least two full-time employees during the relevant time periods.

D

Finally, Allsup's has shown that Lewis and Schumacher had the authority to hire and fire other employees or that their suggestions and recommendations

---

[12] Dalheim v. KDFW-TV, 918 F.2d 1220, 1227 (5th Cir. 1990); see Vela v. City of Houston, 276 F.3d 659, 677 (5th Cir. 2001) (explaining that the relevant factors include: 1) the relative importance of managerial duties; 2) frequency of discretionary powers; 3) relative freedom from supervision; and 4) the relationship between exempt employees' salary and non-exempt employees' wages).

[13] Dalheim, 918 F.2d at 1227.

as to the hiring, firing, advancement, promotion or any other change of status of other employees were given particular weight.

> To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon.[14]

Schumacher and Lewis argue that they did not have the authority to make employment decisions because they had to first obtain permission from their supervisor. However, "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status."[15]

With respect to hiring, Lewis and Schumacher each testified that while they had to obtain final approval from their supervisor or the home office, their hiring recommendations were almost always followed. The only noted exception was when a background check on a recommended employee disclosed a criminal record. As to firing, Lewis testified that there were no employees that she was not allowed to fire, and Schumacher testified that she fired an employee without seeking authorization from a higher manager. In addition, Lewis and Schumacher testified that their recommendations were followed with respect to other personnel matters, such as promotions and raises. We conclude that Lewis and Schumacher had the authority to hire and fire other employees or, at the very least, their suggestions and recommendations were given particular weight.

Because the evidence in the record established that Lewis and

---

[14] 29 C.F.R. § 541.105.

[15] Id.

Schumacher met the FLSA requirements for exempt employees, the decision of the district court is AFFIRMED.