# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2214

_____

Terry Madden, Individually and on behalf of others similarly situated; Doug Wortman, Individually and on behalf of others similarly situated; Rebecca O'Bar, Individually and on behalf of others similarly situated

*Plaintiffs - Appellees*

v.

Lumber One Home Center, Inc.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 14, 2014
Filed: March 17, 2014

_____

Before GRUENDER, BRIGHT, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

In August 2010, three former employees of Lumber One Home Center, Inc., a lumberyard in Mayflower, Arkansas, filed suit against the company. The employees claimed Lumber One incorrectly classified them as executive employees who were exempt from overtime pay regulations under the Fair Labor Standards Act (FLSA). See 29 U.S.C. § 207(a)(1) (requiring pay of at least one and one-half times the regular

rate for time worked in excess of forty hours per week). After a two-day trial, a jury returned a verdict in favor of Lumber One. The jury found that all three plaintiff-employees worked in an executive capacity and were therefore not entitled to recover overtime wages. Following trial, the plaintiffs moved for judgment as a matter of law, which the district court granted. After overturning the jury verdict, the district court awarded the plaintiffs overtime pay and attorneys' fees. Lumber One appealed. We affirm the district court's judgment as to two employees, reverse as to one employee, and remand for a recalculation of attorneys' fees in light of our holdings.

I.

Plaintiffs Terry Madden, Rebecca O'Bar, and Doug Wortman are former employees of Lumber One Home Center, a small lumberyard in Mayflower, Arkansas. Lumber One is owned and managed by John Morton. Morton operated a lumberyard in Stuttgart, Arkansas, and opened his second store—the store in Mayflower—in November 2008. In the months prior to the Mayflower store opening, Morton hired Madden, O'Bar, and Wortman. Morton intended for the plaintiffs to serve as supervisors and managers once the store opened. The employees were salaried, labeled as executives, and classified by Lumber One as exempt from overtime pay under the FLSA. See 29 U.S.C. § 213(a)(1) (exempting "any employee employed in a bona fide executive, administrative, or professional capacity" from overtime pay requirements).

Morton hired Madden in May 2008 to work in shipping and receiving. In anticipation of the November store opening, Madden assembled shelves and received merchandise. Once the store opened, Madden completed data entry tasks and helped out in the lumberyard by assisting customers, unloading trucks, and collecting trash when needed. Madden stopped working at Lumber One in July 2010.[1]

---

[1]The details regarding the end of the plaintiffs' employment at Lumber One are not material to this appeal.

Morton hired O'Bar in July 2008.  Prior to the store opening, O'Bar also assembled shelves and stocked merchandise.  Once the store opened, O'Bar worked in the lumberyard and in shipping and recieving.  O'Bar stopped working at Lumber One in February 2009.

Wortman worked in the lumberyard from September 2008 until March 2009, and then again from mid-June 2009 until September 2009.  Wortman waited on customers, helped load trucks, and on occasion would direct the truck drivers regarding where to make deliveries.

The parties agree that the plaintiffs worked overtime throughout their employment at Lumber One.  Because the plaintiffs worked in excess of forty hours per week, the FLSA required Lumber One to pay them overtime unless they fit one of the FLSA's exemptions.  See 29 U.S.C. § 207(a)(1) (overtime pay requirements); 29 U.S.C. § 213(a)(1) (exemptions to overtime pay requirements).  Morton classified the plaintiffs as executives under one such exemption in the FLSA.  29 U.S.C. § 213(a)(1) (exemptions for employees "employed in a bona fide executive, administrative, or professional capacity").

To qualify for an executive exemption, Lumber One must show, among other things, that the plaintiffs were involved in making personnel decisions.  Morton made all of the hiring and firing decisions at Lumber One.  When preparing to hire a new employee, Morton generally asked all of the existing employees—supervisors as well as hourly employees—if they knew the applicant.  Morton said he did this because he was new to Mayflower and did not know the local applicants as well as some of the existing employees, including the plaintiffs.  Morton hired roughly six to eight employees at the Mayflower store in 2008 and 2009.  According to Morton, the economy was worse than expected in 2008, and as a result, he hired fewer employees than he originally intended.

The plaintiffs ended their employment with Lumber One on the dates listed above. In 2010, the U.S. Department of Labor investigated allegations of FLSA violations at Lumber One regarding the plaintiffs and other employees. In July 2010, the Department of Labor notified the plaintiffs that Lumber One may have wrongfully denied them overtime pay.

In August 2010, the plaintiffs sued Lumber One to recover overtime wages, claiming that Lumber One erroneously classified them as exempt executives under the FLSA. See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."). After a two-day trial in March 2012, a jury found in favor of Lumber One and against all three plaintiffs. The plaintiffs moved for judgment as a matter of law, claiming that Lumber One had not presented sufficient evidence to meet its burden of showing that the plaintiffs were indeed executive employees under the FLSA. In April 2012, the district court overturned the jury verdict and granted the plaintiffs' motion, finding that Lumber One had failed to prove the fourth element necessary to qualify for the executive employee exemption. The fourth element required Lumber One to prove that the plaintiffs had the authority to hire or fire employees, or that their recommendations regarding personnel decisions were given "particular weight" by the decisionmaker. See 29 C.F.R. § 541.100(a)(4).

After reversing the jury verdict, the district court awarded the plaintiffs their unpaid overtime wages and also awarded statutorily-provided liquidated damages. 29 U.S.C. § 216(b). The district court awarded a total of $7,555.20 to Madden, $1,234.80 to O'Bar, and $2,339.20 to Wortman, for a combined total award of $11,129.20. The district court also awarded the plaintiffs $50,696.74 in attorneys' fees and costs. Lumber One appeals and argues that the jury had sufficient evidence to conclude that the plaintiffs were executive employees at Lumber One and thus were

not illegally denied overtime pay. Lumber One separately appeals the attorneys' fee award.

## II.

We review de novo a district court's grant of a motion for judgment as a matter of law. Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp., 729 F.3d 846, 854 (8th Cir. 2013). A court may grant judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party[.]" Fed. R. Civ. P. 50(a)(1); Am. Bank of St. Paul v. TD Bank, N.A., 713 F.3d 455, 462 (8th Cir. 2013). "A jury verdict should not be overturned unless there is a complete absence of facts to allow a jury to reach its conclusion." Wilson v. Brinker Int'l, Inc., 382 F.3d 765, 770 (8th Cir. 2004) (internal quotation marks and citations omitted); see also Athey v. Farmers Ins. Exch., 234 F.3d 357, 362 (8th Cir. 2000) ("Judgment as a matter of law is appropriate only when the record contains no proof beyond speculation to support the verdict.").

The employer has the burden to prove that its employee is an executive and therefore exempt from the FLSA's overtime pay requirements. Fife v. Harmon, 171 F.3d 1173, 1174 (8th Cir. 1999). Exemptions to the FLSA are narrowly construed to protect workers. See, e.g., Spinden v. GS Roofing Prods. Co., 94 F.3d 421, 426 (8th Cir. 1996). In addition, the Office of Personnel Management has promulgated a regulation requiring that "the designation of an employee as FLSA exempt or nonexempt must ultimately rest on the duties actually performed by the employee." 5 C.F.R. § 551.202(e). While not binding on this court, we find the regulation instructive. See Folger v. Medicalogies, Inc., No. 13-1203-MLB, 2013 WL 6244155, at *4 (D. Kan. Dec. 3, 2013).

We determine whether an employee meets the executive exemption by applying Department of Labor regulations. See Fife v. Bosley, 100 F.3d 87, 89 (8th Cir. 1996).

The Department of Labor defines an "executive" employee—that is, one exempt from FLSA requirements relating to overtime pay—as follows:

> (a) The term 'employee employed in a bona fide executive capacity' in section 13(a)(1) of the Act shall mean any employee:
>
>> (1) Compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
>>
>> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>>
>> (3) Who customarily and regularly directs the work of two or more other employees; and
>>
>> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100.  At issue in this case is whether the plaintiffs' job duties met the requirements of the fourth element.[2]  In other words, we must determine whether the jury was presented with evidence that reasonably would support an inference that the plaintiffs had the ability to hire and fire other employees, or that their hiring recommendations were given "particular weight."  The Department of Labor defines "particular weight" as follows:

> To determine whether an employee's suggestions and recommendations are given 'particular weight,' factors to be considered include, but are not

_____

[2]The plaintiffs argue that the second and third elements could provide alternative bases for affirming the district court's judgment.  See _infra_ footnote 4.

limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

29 C.F.R. § 541.105. The district court, in granting the plaintiffs' motion for judgment as a matter of law, found that Lumber One presented no evidence that the plaintiffs had the authority to make personnel decisions or that Morton gave their hiring recommendations particular weight.

We first address what type and what amount of input into personnel decisions is sufficient to satisfy the fourth element of the FLSA's executive exemption. Second, we look at the evidence in this case. We conclude that Lumber One failed to show that Madden and O'Bar met the executive exemption standard but that Lumber One did prove that Wortman was eligible for the executive exemption.

## A. 29 U.S.C. § 213(a)(1)

Courts previously addressing what is required by the fourth element of the FLSA executive exemption suggest that more than informal input, solicited from all employees, is needed to prove applicability of the executive exemption. See, e.g., Lovelady v. Allsup's Convenience Stores, Inc., 304 F. App'x 301, 306 (5th Cir. 2005)

(per curiam) (unpublished) (affirming the district court's decision that plaintiff-store managers met the fourth element because their hiring recommendations were almost always followed and they could fire employees without obtaining authorization from a higher manager); Grace v. Family Dollar Stores, Inc., 845 F. Supp. 2d 653, 663 (W.D. N.C. 2012) (finding fourth element satisfied because plaintiff, a store manager, selected applicants for interviews, conducted interviews, and recommended employees for promotions and demotions, and her recommendations were almost always followed by the district manager); Rainey v. McWane, Inc., 552 F. Supp. 2d 626, 632 (E.D. Tex. 2008) (finding fourth element satisfied because plaintiff, a production supervisor, completed weekly employee evaluations, recommended employee discipline, and recommended which temporary employees should be hired permanently); Goulas v. LaGreca, No. 12-898, 2013 WL 2477030, at *10 (E.D. La. June 7, 2013) (finding fourth element satisfied because the employer was grooming the plaintiff to eventually take over the company, and the employer terminated employees based on plaintiff's recommendations). These cases provide useful guidance for understanding what is needed to satisfy the fourth element of the executive exemption. After looking at the different factors these courts used to find the fourth element satisfied, including the offering of personnel recommendations that were acted upon by managers, involvement in screening applicants for interviews, and participation in interviews, among others, it is apparent that many different employee duties and levels of involvement can work to satisfy this fourth element. When we look at the evidence regarding how Lumber One utilized Madden and O'Bar in this case, however, we find that it simply does not meet the standard. Cf. 5 C.F.R. 551.202(e) ("[T]he designation of an employee as FLSA exempt or nonexempt must ultimately rest on the duties actually performed by the employee.").

The evidence presented at trial concerning the plaintiffs' duties consisted solely of testimony from the plaintiffs, Morton, and office manager Amy Quimby. Morton testified that none of the plaintiffs hired or fired other employees. Therefore, in order to satisfy the fourth element, Lumber One needed to present evidence at trial that the

-8-

plaintiffs were consulted about personnel decisions and that Morton gave each of their opinions particular weight regarding specific hiring decisions. Prior to hiring a new employee, Morton generally asked all of the Mayflower employees if they knew the applicant and could provide information about that person, and Lumber One believes this is sufficient to support the jury's verdict.

At trial, Morton generically described how he elicited input from employees about applicants and how he used the information he received. For example, when asked if the plaintiffs were ever consulted during the screening process for new applicants, Morton responded: "[W]e would always ask all of our people if they knew someone before we hired them. When we would be interviewing them, we would ask for input from them because these guys were from the local area and we'd always ask if they knew the people or could recommend or knew anything at all about them." Morton also said he took this information seriously, adding that "it was good information. We're hiring blind here, so any input we could have or reference, it was used in making that determination." Lumber One did not present any evidence that the plaintiffs were involved in, for instance, screening applicants, conducting interviews, checking references, or anything else related to its hiring process.

In determining that Lumber One's practice of soliciting informal recommendations from all staff members is insufficient to meet the fourth element of the executive exemption, we find Rooney v. Town of Groton, 577 F. Supp. 2d 513 (D. Mass. 2008), instructive. In Rooney, the court held that a police lieutenant satisfied all of the requirements for designation as an exempt executive employee. Id. at 523–32. Concerning the fourth element, the court noted that the lieutenant was a member of an interview panel that ranked applicants, discussed the merits of applicants, and made hiring recommendations. Id. at 531. In addition, the police chief took the lieutenant's opinion into consideration when determining which employees to promote. Id. While the lieutenant had no control over the ultimate hiring and

personnel decisions, the court found that he was sufficiently involved in the hiring process to classify him as an exempt executive employee. Id.

Rooney specifically addresses Lumber One's argument that Morton could have given the plaintiffs' recommendations particular weight even though he asked all of his employees for input. In Rooney, the lieutenant characterized his recommendations to the police chief as the same type of recommendation an ordinary patrolman could provide to the chief, so he should not have been classified as an exempt employee. Rooney, 577 F. Supp. 2d at 531. The court rejected his argument, finding that the lieutenant's recommendations were given more weight than an ordinary patrolman. The court concluded that "the regulation does not state that Rooney must be the only officer in the department whose recommendations and suggestions are given particular weight, but rather that a 'higher level manager's recommendation [may have] more importance.'" Id. (citing 29 C.F.R. § 541.105).

In the present case, Morton testified that he solicited input from all employees. He did not testify that some employees' input had more influence than others. Lumber One argues that requiring Morton to testify that he placed "particular weight" on each plaintiff's input, as Lumber One claims the district court did in the order granting the plaintiffs' motion for judgment as a matter of law, is unfair because it requires a lay person to use legal jargon in his testimony. We agree that Morton was not required to use the exact phrase "particular weight." Morton could have used any number of words to convey that he gave the plaintiffs' recommendations special consideration when making hiring decisions. The material point, however, is that in order to meet the fourth element of the executive exemption, Lumber One must present some proof that the purported executives' input into personnel decisions was given particular weight. 29 C.F.R. § 541.105. For example, one way they could have done this is to show that the purported executives' input had more influence than hourly employee' input. This is especially true if that recommendation is the only evidence relied on for the exemption, which is what happened in this case.

Lumber One also argues that because the business was struggling financially in 2008 and did not hire many employees, the plaintiffs were simply unable to participate in personnel decisions because none were being made. In this regard, we note that the Office of Personnel Management's regulation stating that FLSA exemptions are based on actual job functions, not intended responsibilities, is persuasive in this circumstance. See 5 C.F.R. § 551.202(e) (noting that FLSA exemptions are based on "duties actually performed by the employee"). The Rooney court acknowledged that the police department in that case was small and that its size should be a factor "taken into account when determining the frequency of recommendations made by the plaintiff. It is reasonable to assume that generally a smaller police department would have correspondingly fewer new hires, fires, and promotions." 577 F. Supp. 2d at 531. The same is true with Lumber One. Morton estimated that he hired between six and eight employees during the time the plaintiffs were employed at Lumber One. Morton testified that he generally asked all of the employees if they knew applicants, but there is no evidence that the plaintiffs had any sort of involvement in the hiring process like the lieutenant in Rooney. The plaintiffs did not participate in the interviews, did not review resumes, did not rank applicants, and did not make hiring recommendations outside of informal reference checks. Contra id. at 522 ("[Rooney] has acted as a member of an interview panel, ranked applicants on account of their suitability for the position, discussed the merits of applicants, made applicant recommendations to the Chief regarding the applicant's suitability, discussed the potential promotion of a Patrolman to the rank of Sergeant, and discussed the assignment of an officer to an administrative position[.]"). And Morton asked all employees for informal reference checks, not just the plaintiffs.[3] Morton asserts that he *would have* involved the plaintiffs more if he had hired more employees. This may be true, but it requires the jury to impermissibly speculate and

---

[3]As we will discuss later, we conclude that Morton did give particular weight to plaintiff Wortman's hiring recommendations.

to rely on intended rather than actual job functions.  See Clark v. Long, 255 F.3d 555, 557 (8th Cir. 2001) ("[When ruling on a motion for judgment as a matter of law, t]he nonmovant receives the benefit of all reasonable inferences that may be drawn from the evidence, but *those inferences may not be based solely on speculation*." (emphasis added)).

## B.  Terry Madden and Rebecca O'Bar

Against this backdrop, we now turn to the evidence regarding each individual plaintiff.  At trial, Morton could not recall Madden or O'Bar providing a single personnel recommendation.  Morton stated that he could only recall the company's "general policy there as to how we did that."  In response to the question, "Did any of the plaintiffs hire Lumber One employees?"  Morton responded, "No, they didn't. Well, Doug [Wortman] was involved in hiring some of the truck drivers."  When questioned if O'Bar ever provided a recommendation for an applicant, Morton responded, "Not that I recall."  Morton said he intended to include O'Bar in the hiring process, but because Lumber One was not hiring while she was employed, she never had the opportunity to participate.  Later in the trial, counsel asked Morton if he could remember O'Bar recommending any applicant for hire. Morton responded, "Offhand today, I can't tell you one, no."

Morton similarly could not remember Madden being involved in any hiring decision.  When asked about Madden, Morton again referenced only the general policy: "Once again, what we would do, anytime that we hired anybody, which we hired very, very few in this time period, and I don't recall - - you know, it depends on what time frame we're talking about, but we would always ask all of our people if they knew someone before we hired them."  When asked again, "Is it your testimony that [Madden] did not recommend anybody for hiring?" Morton responded, "I do not remember, to be honest with you.  I know that we consulted with him or asked him if he knew people."  Morton asserted that he "definitely remember[ed] asking Terry

Madden if he knew people that we were interviewing," but Morton could not provide additional information related to any recommendations Madden may have provided. When asked if Madden hired any employees, Morton replied, "No, ma'am, he did not hire any."

Morton's testimony is simply not enough to satisfy the fourth element of the FLSA's executive exemption for Madden and O'Bar. To be sure, one of the jury's main responsibilities is to make credibility determinations. However, here the jury was forced to speculate due to Morton's lack of memory regarding specific recommendations and hiring decisions. Moreover, Morton's admissions that Madden and O'Bar were not involved directly in hiring contradicts Lumber One's contentions that the plaintiffs were actually Lumber One executive employees whose input was solicited and considered prior to making personnel decisions. Indeed, for a jury to reach that conclusion, a jury had to speculate that, if Morton were able to recall specifics from 2008 and 2009, he would be able to testify about Madden and O'Bar's involvement in personnel decisions. This is not a credibility determination; this is speculation. See Wilson, 382 F.3d at 770 ("Judgment as a matter of law is appropriate only when the record contains no proof beyond speculation to support the verdict."). While it should be rare that a judge elects to override a jury verdict, the district court was correct in this case to do so. See Hunt v. Neb. Pub. Power Dist., 282 F.3d 1021, 1029 (8th Cir. 2002) ("We recogniz[e] that the law places a high standard on overturning a jury verdict . . . because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused." (internal citation omitted)). Lumber One simply presented no evidence that would allow a jury to determine, without conjecture, that Lumber One satisfied the fourth element with respect to Madden and O'Bar.

## C. Doug Wortman

In contrast, we conclude that Lumber One did present sufficient evidence to allow a jury to conclude that Wortman provided a recommendation for at least one employee and that Morton relied on that recommendation when deciding to hire the applicant.  Accordingly, we reverse the district court's judgment as to Wortman and reinstate that portion of the jury verdict in favor of Lumber One.

Morton testified at trial that Wortman knew two applicants, truck drivers Fred Dempsey and Anthony Dixon, and that Morton appreciated Wortman's input regarding both applicants' qualifications.  Morton testified that "we're brand-new, so I asked everybody there for a reference on any new hire at this point to - - and [Wortman] recommended these guys, said they were good folks, Fred [Dempsey] in particular.  I think he and Fred had a - - somewhat of a friendship maybe in the past."  Morton later asserted that if Wortman had provided a bad recommendation, Morton would not have hired Dempsey.  Morton testified that "when we did do that little bit of hiring, we asked everyone.  We tapped every resource we had. . . . [Wortman] would put his stamp of approval on, and I'll use Fred Dempsey, for instance, you know, if he would have said, no, we don't want him, he would not have been there."

Morton's testimony provided sufficient evidence that reasonably could lead a jury to believe that Wortman provided recommendations about Dempsey and that Morton gave particular weight to Wortman's recommendation when deciding to hire Dempsey.  See 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.100.  In addition, Wortman testified that although he was not hired to supervise employees, Morton occasionally had him direct the truck drivers, which included Dempsey, regarding where to make deliveries.  See 29 C.F.R. § 541.105 (generally requiring that an executive's recommendations pertain to employees whom the executive directs).  Because there is evidence regarding Wortman's involvement in at least one personnel decision, we conclude that the district court erred by overturning the jury's verdict finding that

Wortman was an executive employee who was exempt from FLSA overtime pay requirements.[4]

## III.

Following entry of the judgment as a matter of law, the district court granted the plaintiffs' request for attorneys' fees. See 29 U.S.C. § 216(b). The plaintiffs originally sought $103,751.75 in attorneys' fees and $1184.82 in costs. The court, after extensive discussion and analysis of the fee calculations, determined that the figure was unreasonable and awarded the plaintiffs $50,049.92 in attorneys' fees and $646.82 in costs, for a total of $50,696.74. Lumber One appeals the grant of attorneys' fees, arguing that the figure is unreasonably high. In light of our holding that the district court erred by entering judgment as a matter of law on Wortman's FLSA claim, we remand to the district court for an appropriate recalculation of attorneys' fees.

## IV.

For the foregoing reasons, the judgment of the district court is affirmed with respect to Madden and O'Bar, reversed with respect Wortman, and remanded for a new determination of attorneys' fees.

————————————————

[4]The plaintiffs argue that the second and third elements of the executive exemption could provide alternative bases for affirming the district court's judgment. We conclude that the evidence Lumber One presented that Wortman directed the truck drivers is sufficient to uphold the jury's verdict that Wortman was engaged in management and customarily directed the work of two or more employees. As such, the second and third elements of the executive exemption do not provide alternative bases to affirm the district court's judgment as a matter of law.