Filed 6/30/16  Shimada v. Nakamura Air Express CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SHINJI SHIMADA, | B264670 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. YC068995) |
| v. | |
| NAKAMURA AIR EXPRESS (USA), INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ramona G. See, Judge.  Reversed and remanded with directions.

Law Offices of Joseph F. Hart and Joseph F. Hart for Plaintiff and Appellant.

Fehmel & Associates and T. Michael Fehmel for Defendant and Respondent.

_____

Shinji Shimada appeals from the adverse judgment in a wage and hour case he filed against respondent Nakamura Air Express (USA), Inc. Appellant argues the court's finding that he was an exempt employee is based on legal error and is not supported by substantial evidence. We agree that respondent did not prove all elements of the executive exemption and reverse the judgment. We remand the case for consideration of appellant's claims for damages.

**FACTUAL AND PROCEDURAL SUMMARY**

By the time he was hired by respondent in 2008, appellant had worked in the freight forwarding industry for 27 years. The first 25 of those he spent at Nippon Express, a large Japanese freight forwarding company. As an e-commerce supervisor there, he had five subordinates, but in his last position, as an aircraft parts supervisor, he did not supervise anyone. Appellant then worked for a year and a half as an export operations manager at the Los Angeles office of NNR Logistics, another large Japanese freight company, where he had seven subordinates.

Respondent is a Japanese air freight company that arranges shipments of goods for its customers. Its general manager, Tsuyoshi Ryono, knew appellant from having worked with him at Nippon Express and recommended him to respondent's president, Fumio Tamada, because respondent was starting an aircraft parts department, and appellant had experience in that area. Respondent's employees were young, with two to four years of experience, and Tamada wanted to hire someone experienced who could supervise them. Tamada told appellant he was looking for a good supervisor who could work with young employees and become manager. Both Ryono and Tamada expected appellant to advance to a manager position because of his prior experience, and Ryono thought appellant could become general manager when Ryono retired.

Respondent's Los Angeles facility consists of a warehouse and an office. The operations department works from the office. Appellant worked in that department between December 2008 and March 2013. There were about 15 employees during that time. Except for warehouse workers, who were paid hourly wages, everyone was paid a

2

monthly salary. Operations clerks were paid between $2,400 and $2,500 a month. In contrast, appellant's starting salary was $4,000. Due to financial constraints, it was later lowered to $3,600 and then raised to $3,700.

As a supervisor, appellant was responsible for daily operations and staff management. Daily operations included contacting customers to confirm freight for the day; making reservations with airlines; negotiating rates; preparing documents for shipment; arranging delivery of products; and confirming the loading and transportation of goods. Appellant had to make sure that operations clerks completed their daily tasks and that warehouse workers delivered the cargo to the airlines on time, but he was not responsible for loading, unloading, or driving trucks. As a supervisor, appellant was required to plan the time of delivery of goods to the airlines and to obtain alternative cargo space in the event of cancellation; the latter responsibility could not be delegated to operations clerks. Because shipment of dangerous goods had to be certified by a licensed agent and appellant had a dangerous goods license, he was responsible for supervising all shipments of dangerous goods, such as paint, chemicals, gases, and aircraft parts. Specifically, he was responsible for directing and checking the packaging of such goods by the warehouse workers. Appellant did not have authority to hire or fire employees, and he did not participate in formal employee evaluations. In casual conversation, he answered management's questions about other employees and made comments and suggestions about hiring needs.

Toshiaki Sakurai joined respondent in 2009 and worked in the warehouse until 2011. When Sakurai became an operations clerk in 2011, appellant was the supervisor who trained him and other clerks, such as Yuki Abe, on operations procedures. In 2012, Sakurai became an operations manager and appellant's supervisor. During his deposition, Sakurai identified only Omar Becerra and Mamoru Tanaka as individuals whom appellant supervised, but at trial, Sakurai testified appellant supervised three additional employees: Andy Dias, Juan Diaz, and Carlos Mejia. Sakurai explained that his deposition testimony pertained only to individuals appellant supervised within the operations department. However, Becerra testified appellant supervised and trained him

3

when Becerra was a warehouse worker.  After Becerra moved to the office, appellant no longer was his direct supervisor; according to Becerra, appellant supervised three other operations clerks: Tanaka, Chihiro, and Miho.[1]

Appellant's normal workday was nine hours, with a one-hour lunch break, but he often worked more than 10 hours a day.  His daily activities included responding to e-mails, contacting clients to check on their shipping needs, collecting shipping items and making shipping arrangements, calling airlines to book shipments, and preparing shipping documents and items for shipment.  At times, he helped in the warehouse by loading and driving trucks.  According to Sakurai, everyone helped load trucks when the company was busy, but Sakurai rarely saw appellant do that, and he saw appellant drive a truck only on a few occasions, no more than once or twice a month.

Appellant was not prevented from taking meal and rest breaks, but he was cautioned about taking breaks that were longer than one hour.  He took evening meal breaks without clocking out.  Sakurai and Becerra saw him take rest breaks.  Becerra observed appellant was slow and "lazy," spending so much time in the kitchen area that Becerra considered that area to be appellant's "second office."  Becerra rarely saw appellant in the warehouse and did not see him load or drive trucks, operate machinery, and deliver or pick up goods.

Appellant was expected to spend more than 50 percent, or up to 70 percent, of his workdays supervising others; instead, he devoted no more than an hour a day, or 5 or 10 percent of his time, to supervisory duties.  His slow work and poor supervision required upper management to do additional work.  Appellant failed to train his subordinates on how to pack dangerous goods, and the general manager had to help him meet deadlines.

---

[1] In its response to interrogatories, respondent listed appellant's subordinates as Mejia, Diaz, and Dias.  The company's organizational chart as of April 1, 2012 identified them as "warehouse operation" workers.  Above them on the chart, appellant, Becerra, and Tanaka were listed as responsible for air operation, with appellant responsible for "dry cargo" (dangerous goods) and air import, Becerra responsible for "perishable" goods, and Tanaka responsible for "sea urchin" and "dry cargo."  Sakurai and Abe are listed as operation managers, and Ryono is listed separately as "TSA/ regu[l]ation."  The names Chihiro and Miho do not appear on the chart.

When Ryono confronted appellant about his failure to train subordinates, appellant responded "he did not have time to do it because he was busy waiting for calls." When Ryono cautioned appellant about his time management, appellant "did not seem to care."

On three occasions in 2009, Ryono orally counseled appellant about his job performance, and in November 2009, he sent appellant a written warning about his poor time management, lack of teamwork, and lack of leadership skills. Ryono talked to appellant about his failure to train subordinates and his poor time management on many other occasions but did not send him any more written warnings. At least twice in 2012, Sakurai spoke to appellant about his unsatisfactory job performance, specifically his slow work and poor supervision. Sakurai also notified Tamada and Ryono of his concerns. Tamada spoke to appellant about his poor performance on more than 10 occasions. He counseled appellant about being late for work and performing tasks that should have been performed by operations clerks, but the only written warning he issued appellant had to do with the latter's failure to properly notify a customer of a changed reservation in September 2012. Eventually, appellant was given the choice of improving his performance or leaving the company. He chose to quit in 2013.

Shortly after that, appellant sued respondent for unlawful business practices, seeking damages for unpaid overtime, missed meal and rest breaks, as well as statutory penalties for the failure to pay him overtime wages in a timely manner and to provide him with accurate wage statements. After a bench trial, the court ruled that appellant was an exempt employee because he supervised others, used independent judgment and made discretionary decisions in handling shipping problems for customers, was the only employee with a hazardous materials license, and was paid a monthly salary of $4,000. The court did not find credible appellant's testimony that he demoted himself from a supervisor to a warehouse worker. The court also disagreed with appellant's contention that respondent's "wish list of activities [appellant] should have been involved in is not germane to the decision," and it found that appellant had been warned about not fulfilling his duties and working too slowly. The court concluded that because appellant was exempt, he was not entitled to overtime, meal and rest break damages, or penalties. It

noted, however, that he failed to prove he suffered any damages because his expert assumed he missed every meal and rest break even though appellant admitted taking breaks and was seen by others doing so. Judgment was entered in favor of respondent.

This appeal followed. Appellant proceeds by settled statement.

## DISCUSSION

### I

Unless exempt, California employees are entitled to meal and rest breaks, as well as overtime pay. (Lab. Code, §§ 226.7, 510, 512, 515; *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1018; *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 324.) Exemptions for executive, administrative and professional employees are established by the Industrial Welfare Commission (IWC). (Lab. Code, § 515, subd. (a).)

The executive exemption, which is at issue in this case, applies to an employee "(a) [w]hose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and [¶] (b) [w]ho customarily and regularly directs the work of two or more other employees therein; and [¶] (c) [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and [¶] (d) [w]ho customarily and regularly exercises discretion and independent judgment; and [¶] (e) [w]ho is primarily engaged in duties which meet the test of the exemption. . . . [¶] (f) Such an employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment." (IWC wage order No. 9–2001, Cal. Code Regs., tit. 8, § 11090, subd. 1(A)(1); hereafter Wage Order 9.)[2]

---

[2] Wage Order 9 regulates working conditions in the transportation industry. (*In re United Parcel Service Wage and Hour Cases* (2010) 190 Cal.App.4th 1001, 1010 (*UPS*).)

A trial court's determination that an employee was properly classified as exempt involves a mixed question of law and fact. (*Ramirez v. Yosemite Water Co., Inc.* (1999) 20 Cal.4th 785, 794 (*Ramirez*).) The exemption is narrowly construed, and the employer bears the burden of proving all of its elements, which are stated in the conjunctive. (*Id.* at pp. 794–795; *Heyen v. Safeway Inc.* (2013) 216 Cal.App.4th 795, 817 (*Heyen*).) The "manner of evaluating the employee's duties is a question of law that we review independently [citation]" but "[w]hether an employee satisfies the elements of the exemption is a question of fact reviewed for substantial evidence. [Citation.]" (*Ibid.*)

Appellant argues the trial court overlooked one of the elements of the executive exemption: whether he had authority to hire or fire employees. Since the court was not asked to and did not issue a statement of decision under Code of Civil Procedure section 632, we must presume it made all factual findings necessary to support the judgment, and we review its implied findings for substantial evidence. (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 293.)

Respondent need not prove that appellant had authority to hire or fire employees, so long as appellant's suggestions and recommendations with regard to the employment status of subordinates were given "'*particular weight*.'" (*UPS*, *supra*, 190 Cal.App.4th at p. 1022.) Several federal regulations promulgated under the Fair Labor Standards Act (29 U.S.C. § 201 et seq.) are relevant to the executive exemption in Wage Order 9. (Cal. Code Regs., tit. 8, § 11090, subd. 1(A)(1)(e), citing 29 C.F.R. § 541.102, 541.104–111 & 541.115–116; see also *UPS*, at p. 1015 [relevant federal law may be considered persuasive authority].) One of those regulations lists factors pertinent to the determination whether an employee's suggestions and recommendations regarding hiring and firing decisions are given particular weight. Those factors are "whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional

7

suggestion with regard to the change in status of a co-worker." (*Madden v. Lumber One Home Center, Inc.* (8th Cir. 2014) 745 F.3d 899, 903–904, quoting 29 C.F.R. § 541.105.)

Respondent did not elicit testimony sufficient to meet its burden of proof on this element of the executive exemption. While respondent's witnesses testified that appellant did not perform his supervisory duties competently, there is no evidence that those duties included making recommendations regarding employment matters. Sakurai, appellant's immediate supervisor, testified appellant had no authority to hire and fire employees, and he did not recall appellant attending performance reviews, evaluating employees, or providing input on employment decisions. Appellant testified that, in casual conversation, he answered managers' questions about employees and made comments and suggestions about hiring needs. The settled statement does not indicate whether those questions pertained to employment decisions regarding appellant's subordinates, and neither appellant nor any of respondent's witnesses testified that appellant's answers, comments, and suggestions were given any particular weight.

Because there is no evidence that appellant had any say in employment decisions affecting his subordinates, we conclude that respondent did not meet its burden of proof on all elements of the executive exemption. Therefore, appellant is to be treated as a nonexempt employee.[3]

## II

The trial court found appellant was not entitled to damages and penalties because he was exempt, but it made additional comments regarding his failure to prove his damages. Respondent argues that the court found all of appellant's damages lacked foundation. We disagree. The court noted that appellant's expert witness assumed appellant missed every meal and rest break even though appellant testified he took breaks and was seen by others doing so. The court's comments pertain solely to appellant's

---

[3] We do not reach appellant's alternative argument that respondent could not have reasonably expected him to predominantly engage in supervisory activities if it kept him in a supervisory position for four years despite knowing that he spent a negligible amount of his time (five to 10 percent, or one hour a day) on his supervisory duties.

8

claim for damages for missed breaks.  We see no indication that the court considered appellant's claims for overtime wages and statutory penalties, and we remand the case for consideration of those claims.[4]

As to meal and rest breaks, appellant argues that the court erroneously required him to prove his damages with precision even though respondent did not keep accurate records and its employee handbook did not provide for a second meal break.  Work Order 9 requires that employees working more than 10 hours a day be given two meal periods of at least 30 minutes.  (Cal. Code Regs., tit. 8, § 11090, subd. 11(B).)  Employees must be allowed to take 10-minute rest breaks for every 4 hours of work.  (*Id*., § 11090, subd. 12.)  Respondent's employee handbook provides for a meal period of one hour a day, and 10-minute breaks for every four hours of work.  Appellant's expert witness assumed that appellant took a one-hour meal break even though he did not punch out, but that he did not take a second meal break on days when he worked 10 or more hours and that he missed his rest breaks on days when he worked more than four hours.  In its trial brief, respondent argued that appellant was not entitled to damages for meal and rest breaks because there was no evidence he missed any breaks.  The trial court noted appellant admitted to taking "some" breaks and concluded that his expert's assumption that he missed all breaks was without foundation.

As an employee, appellant has the burden of proving "that he performed work for which he was not compensated."  (*Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721,

---

[4] Appellant's expert calculated his overtime damages based on his time cards, which show his times in and out.  Respondent has not challenged the accuracy of those calculations.  Appellant relies on statutory formulas for penalties, but waiting time penalties under Labor Code section 203 require proof that the employer "willfully" failed to pay wages, and a good faith dispute that any wages are due will preclude imposition of such penalties.  (Cal. Code Regs., tit. 8, § 13520.)  Similarly, Labor Code section 226, subdivision (e) requires showing that the employee suffered "injury as a result of a knowing and intentional failure by an employer" to provide proper wage statements.  To determine whether appellant is entitled to statutory penalties, on remand the trial court should make additional findings of fact.

727.) Where the employer records are inadequate, the employee meets his initial burden "'if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.' [Citation.]" (*Id.* at p. 727.) In other words, "if an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided." (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1053.)

Appellant suggests that respondent's failure to keep records of his meal and rest breaks creates a conclusive presumption of liability even though he testified he "took evening meal periods" and did not testify he worked during those periods or missed any rest breaks. In fact, appellant was counseled for taking meal breaks longer than one hour and was seen by others in the kitchen area for an excessive amount of time. On this record, it cannot be said that the expert's assumption that appellant missed all evening meal and rest breaks is a "'matter of just and reasonable inference.'" (*Hernandez v. Mendoza*, *supra*, 199 Cal.App.3d at p. 727.) An employee is not entitled to a windfall for his employer's failure to keep records of his meal and rest breaks where the evidence suggests he regularly took breaks and may have even taken too many breaks. The trial court did not err in finding that appellant is not entitled to damages for missed meal and rest breaks.

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court for determination of appellant's entitlement to overtime damages and statutory penalties, if any.  The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                                    EPSTEIN, P. J.

We concur:


MANELLA, J.


COLLINS, J.